NEW YORK LIFE INSURANCE COMPANY *v.* ALLEN.

Opinion delivered March 29, 1920.

1. INSURANCE—AUTHORITY TO COLLECT PREMIUM NOTE.—Where a director of agencies of an insurance company was authorized to accept payment of a premium note, though it was payable at a certain bank, and to withdraw the note from said bank, he was also authorized to collect such note through another bank.

2. INSURANCE—AUTHORITY TO COLLECT PREMIUM NOTE.—Letters written by a cashier in the office of defendant's director of agencies *held* to authorize a bank to collect a note given by insured for balance of an annual premium, though the note was in another bank where it was payable.

3. INSURANCE—CONSTRUCTION OF LETTERS.—In determining whether two letters written by a cashier in the office of defendant's director of agencies to the cashier of the bank of which assured was president authorized the bank to collect a note given by insured for a part of a premium, the letters are to be more liberally construed than a formal letter of attorney, and are to be interpreted most strongly against the writer.

4. POWERS—CONSTRUCTION.—All powers conferred must be construed with a view to the design and object of them, and the means most usual and proper for carrying their design and object into effect, due consideration being given to the language used.

5. EVIDENCE — PAROL EVIDENCE TO EXPLAIN WRITING.—While parol evidence is inadmissible to vary or contradict a written instrument, resort may be had to it in doubtful cases for the purpose of showing the situation, surroundings and relations of the parties.

6. INSURANCE—PAYMENT OF PREMIUM NOTE—EVIDENCE.—Where insured had money in a bank to pay his premium note due to defendant, his direction to the cashier of the bank to pay the premium note and charge his account with the amount was sufficient to show payment if the cashier had authority to receive it.

7. CONTRACTS—CONSTRUCTION A QUESTION OF FACT WHEN.—Where the language of a contract witnessed by letters is unambiguous, they should be construed by the court; but if ambiguous their construction is a question of fact for the court sitting as a jury.

Appeal from Drew Circuit Court; *Turner Butler,* Judge; affirmed.

### STATEMENT OF FACTS.

Appellee sued appellant to recover on a policy of life insurance for $8,449 issued by appellant to J. L. Allen and payable at his death to his legal representative.

Appellant denied liability on the ground that the policy was not in force at the date of Allen's death because under its terms it had been forfeited for the nonpayment of the premiums during the lifetime of Allen.

The facts, briefly stated, are as follows: Appellant issued a life insurance policy to J. L. Allen for $8,449 payable to his legal representative. The annual premium was due on the 20th of April each year. The first annual premium was paid in full. The second annual premium was due April 20, 1917. The company had a system by which it might extend the time for paying a premium by taking a note on one of its standard forms making the premium payable at a later date. Such notes were written on blue paper and were called blue notes, and the system under which they were used was called the blue note system. Allen's annual premium was $691.30. On April 25, 1917, he paid the company $291.30 and gave the company his note for the remaining $400 due October 20, 1917. This note was a standard form note which was called a blue note. Under his contract with the company, Allen's policy of insurance was forfeited unless he paid this note on or before the 20th day of October, 1917. The home office of the company in New York supervised and had charge of the collection of premiums. H. H. Conley was the director of the agencies for Arkansas; but he had no authority to waive forfeitures, to make, modify, or discharge contracts, or to

extend the time for paying premiums. The blue notes were sent by the home office to him to be placed in a designated bank in Little Rock for collection and were payable at that bank. Conley had nothing to do with the collection of the blue notes, other than putting them in the bank where they were payable; but he could accept payment when they were payable in Little Rock, and withdraw the note from the bank. Conley had a certain limited authority to collect premiums, which extended to the collection of premium notes sent to him from the main office in New York; and to notes placed in his hands for collection. The blue note of Allen for $400, due on the 20th day of October, 1917, was sent to him at Little Rock and placed in the Bank of Commerce of that city for collection.

J. L. Allen, the insured, lived at Monticello, Arkansas, and was president of the Commercial Loan & Trust Company of that place. At one time Allen talked with Conley about sending one of his premium notes to the Commercial Bank & Trust Company of Monticello for collection, but was told that this could not be done because of the company's rule of keeping the notes at its depository. J. L. Allen was a man of considerable means and business ability and was well known by Conley. M. A. Blitz was the cashier in Conley's office. On October 13, 1917, Blitz wrote to the cashier of Commercial Loan & Trust Company of Monticello, Arkansas, the following letter:

"Dear Sir: Re: Pol. No. 7 335 561—Joe L. Allen.

"We understand that you have been asked by Mr. Joe L. Allen to take care of the note of $400 due October 20.

"As the policy will lapse if the note is not paid on or before the due date, we will thank you to see that the check is mailed to us in time to prevent the policy from lapsing. The interest will amount to $10, making a total of $410.

"Yours very truly."

On October 17, 1917, the cashier of the bank at Monticello informed Allen of the receipt of this letter. Allen authorized the cashier to pay the $400 note and interest and to charge him with the amount at the bank. Allen at the time, and thereafter until the date of his death, had much more than this amount of money to his credit in the bank.

On the 19th day of October, 1917, Blitz wrote to the cashier of the Commercial Loan & Trust Company, Monticello, Arkansas, the following letter:

"Dear Sir:  Re Pol. No. 7 335 561—Joe L. Allen.

"Kindly do not overlook the note due on Mr. Joe Allen's policy as this will be due on the 20th, the day you receive this letter.

"Yours very truly."

This letter was received by the cashier of the bank about 8:30 o'clock on the morning of October 20, 1917. After conference with Allen it was decided to telegraph the money to the Monticello bank's correspondent at Little Rock, Arkansas, and have it pay the amount of the premium note on that day. Pursuant to this plan the Commercial Loan & Trust Company of Monticello sent the following telegram to its correspondent at Little Rock:  "German National Bank, Little Rock, Arkansas:  Pay M. A. Blitz, cashier New York Life Insurance Company, $410; note J. L. Allen due today."

The telegram was received by the German National Bank during business hours on the 20th day of October, 1917, but by mistake the telegram was placed on the hook of finished business, and for that reason the payment was not made.

Allen's health was apparently good on October 20, 1917. He was president of the Southeast Arkansas Fair Association and was busy helping about the fair on that day. He was suddenly taken sick on his way to Dermott, Arkansas, and died in a few minutes. After his death the money due on his blue note was tendered, but the tender was refused by the agent of the company on the ground that Allen's policy had lapsed.

A great deal of testimony not necessary to be stated in detail was introduced on both sides, but we believe that we have sufficiently stated the testimony to make plain the theory upon which the trial court made its finding.

The case was tried before the court sitting as a jury. The court found that the defendant authorized the payment of the blue note of $400 to the Commercial Loan & Trust Company of Monticello, Arkansas, to which the payment was in fact made.

Accordingly judgment was rendered in favor of appellee for the amount of the policy sued on, and the case is here on appeal.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. The Commercial Loan & Trust Company was not authorized to collect the premium note. It was not the agent of appellant, and prompt payment was not waived. The trust company acted as the agent of Allen, and had no authority to act for the insurance company. As to the validity of the blue note, see 86 N. E. 928; 173 N. W. 591. See also 89 S. E. 445; 93 S. E. 415; 98 *Id.* 832. The policy expired on failure to pay the blue note.

2. The failure of the German Bank to pay the premium was no excuse. 93 Ark. 252.

*Henry & Harris* and *Pace, Campbell & Davis,* for appellee.

1. The note was paid the day it was due and the policy never lapsed.

2. The trust company was authorized to collect the note and the mere *opinion evidence* adduced was not sufficient to overthrow the letter delegating the authority to collect. Such evidence is incompetent. 97 Ark. 176; 18 N. Y. Sup. 441; 22 Atl. 974; 67 Pa. St. 214; 8 Wyo. 50; 1 Thompson on trials, §§ 377-8.

3. Appellant is estopped from claiming a forfeiture of the policy. It induced Allen to believe that payment

of the note to the trust company on the 20th would prevent a lapse.    2 May. on Ins., § 361.

4.    Appellant waived its right to declare a forfeiture by failure to do so before the death of the insured.    14 R. C. L. 977, § 149; 30 Ohio St. 240.

HART, J. (after stating the facts).    The issue raised by the appeal is whether or not there is any evidence of a substantial character to support the finding of the court that the bank at Monticello was authorized by appellant to collect the blue note of Allen and that payment was in fact made by Allen to it.

Conley was a witness for appellant.    According to his testimony, the blue note was payable at the Bank of Commerce, Little Rock, Arkansas.    He had nothing to do with the collection of the blue notes other than putting them into the bank where they were payable; but he could accept payment when they were payable in Little Rock and withdraw the notes from the bank.    Conley was a director of agencies for Arkansas, and Blitz was the cashier in his office.    It is apparent from Conley's testimony that he put the blue notes in the bank in Little Rock for collection and that a policy holder could come to his office and pay them.    Conley was then authorized to withdraw the note from the bank which held it for collection.    Therefore Allen could have gone to Conley's office and have paid the blue note to Conley or to Blitz, the cashier of his office.    If Conley had the authority to collect the note at his own office, he at least had the apparent authority to direct the bank at Monticello to collect the note for him.    The gist of the matter is that Conley had authority to collect the note, and this carried with it the authority to collect it through an agent.

This brings us to a consideration of the question of whether or not Conley gave the bank at Monticello authority to collect the note.    The appointment or authority of an agent is a question of fact.    What the agent may do by virtue thereof is a question of law.    If the bank at Monticello had the authority to collect the notes,

it was conferred by the two letters written to its cashier by the cashier of Conley.

It is the contention of appellant that these letters must be read together and must receive the same strict construction as is ordinarily given a formal power of attorney. This is not the rule.

In *Craighead* v. *Peterson*, 72 N. Y. 279, in discussing the question, Judge Allen said: "A formal instrument delegating powers is ordinarily subjected to strict interpretation, and the authority is not extended beyond that which is given in terms, or which is necessary to carry into effect that which is expressly given. They are not subject to that liberal interpretation which is given to less formal instruments, as letters of instruction, etc., in commercial transactions, which are interpreted most strongly against the writer, especially when they are susceptible to two interpretations, and the agent has acted in good faith upon one of such interpretations."

What was said by the learned judge in that case has been quoted with approval by the leading authorities on the law of agency. Mechem on Agency (2 ed.), vol. 1, par. 784, p. 558, and Clark & Skyles on the Law of Agency, vol. 1, par. 213, p. 515. The last mentioned authors on pages 516 and 517 say: "In construing such an authority, the court must always keep in mind the purpose or object for which the authority was created. The guiding principle in the construction of powers is to be derived from a consideration of the result which the agent or depository of power is appointed to accomplish. When a court is called upon to construe a written authority, its first duty is to ascertain what intention or purpose the principal had in view when he gave the authority to the agent; and when that has been ascertained, the power is to be construed so as to effect that purpose, if possible, instead of defeating it. In conformity with such purpose or intent a general power may be limited, or a limited power made general. As has been said: 'All powers conferred must be construed with a

view to the design and object of them, and the means most usual and proper for carrying their design and object into effect, due consideration being given to the language used.' ''

While it is a familar rule that parol evidence cannot be admitted for the purpose of varying or contradicting a written instrument, in doubtful cases resort to it can be had to show the situation, surroundings, and relations of the parties. Tested by this rule the letters are to be more liberally construed than a formal letter of attorney, in order to effectuate and carry out the intention of the parties.

The record shows that Allen was a man of considerable means and influence in his community. He was in apparent good health and was considered a desirable risk by the company. It was interested in keeping him as one of its policy holders. The letter written on the 13th day of October, 1917, told the cashier that the policy would lapse if the note was not paid on or before the date on which it became due. The cashier was requested to see that the check was mailed to Conley's office in time to prevent the policy from lapsing. This letter, of course, was not sufficient of itself to appoint the cashier of the bank as agent of Conley to collect the note. Conley's cashier, however, on the 19th day of October, 1917, again wrote to the cashier of the bank at Monticello as follows: ''Kindly do not overlook the note due on Mr. Joe Allen's policy as this will be due the 20th, the day you receive this letter.'' It will be observed that Conley's office knew that the letter would not be received until the 20th, the day Allen's note was due, and that payment could not be possibly received at its office in due course of mail. No suggestion or direction is made about getting the money to Conley upon the day of the 20th. No suggestion is made that the policy will lapse if that was not done. Allen had already told the cashier to pay the note and charge his account with the amount. He had money to his personal credit in the bank more than sufficient to discharge his indebtedness to the insur-

ance company. This direction to the cashier was sufficient, we think, to show a payment to the cashier if he had authority to receive it.

It is true that an effort was made to telegraph the money into Little Rock so that it could be paid into the bank which had the note in its possession, but this might have been considered by the trial court, under the circumstances, as an additional effort to see that the bank which held the note got the money in order to obviate any possible dispute about the matter in the future.

Giving all the evidence the effect to which it is legally entitled and viewing the letter of October 19, 1917, in its most favorable light to appellee, a majority of the court is of the opinion that the finding of the trial court that the bank at Monticello was authorized to receive payment of the blue note of Allen was justified.

It follows that the judgment should be affirmed.

McCulloch, C. J. (dissenting). Neither the letter of October 13th, nor the one of October 17th, nor both of them combined, contained the semblance of authority for the bank at Monticello to assume to act as agent of the insurance company. On the contrary, the first letter shows on its face that the writer was treating with one who was supposed to be acting for the policy-holder. The Monticello bank did not, according to the uncontradicted testimony, treat the letter as conferring authority as agent of the insurance company, and the bank made no representation to Allen that it assumed to act for the company. Allen himself had no doubt on the subject, for he dealt with the bank as his own agent. The sole concern of Allen and the bank's cashier on the morning of October 20th, was to find means of getting the money to Little Rock on that day and having it paid over to the company's agent so as to prevent a forfeiture of the policy. They employed ordinary business methods in doing so, but their efforts were made through agencies of their own selection and the consequences of failure fell on the policy-holder, and not on the company, however

disastrous they proved to be. The parties themselves made the contract, and it is not within the province of this court to change it to suit our own ideas of natural justice.

I am unable to discover any evidence on which the verdict can be sustained.

Mr. Justice Smith concurs herein.

Hart, J. (on rehearing). Learned counsel for appellant have devoted a considerable portion of their brief on rehearing to the citation of authorities from the Supreme Court of the United States, and other courts, to the effect that contracts may be formed by letters as well as by other witings, and that the interpretation of such contracts is a question for the court. If counsel mean to say that when the language used in such contracts is unambiguous they should be construed by the court, they but state an elementary proposition of law which needs no citation of authorities to support it. If, on the other hand, they mean to say that the construction of such contracts are for the court, regardless of whether the language used in making the contract is ambiguous, they run counter to our own decisions on the subject.

This principle was well stated in *Massey* v. *Dixon,* 81 Ark. 337, where the court said:

"If the written contract unequivocally manifests the intention of the parties, the court should declare its effect. But where, as in this case, it is not clear from the instrument, taken as a whole, as to whether the parties intended a present or future sale, the court properly submitted the question to the jury for determination."

Again, in *Jones* v. *Lewis,* 89 Ark. 368, the court said that where the intention of the parties does not appear clearly from the written instrument, the question should be left to the jury for its determination. We had in mind this principle of law when we decided the case and reached the conclusion that the judgment should be affirmed on the theory that the letters were ambiguous and that when the court, sitting as a jury, considered the cir-

cumstances surrounding the parties and the situation when the contract was made, it was warranted in finding that the bank at Monticello was the agent of the insurance company for the purpose of collecting Allen's premium. As pointed out in our original opinion, a formal power of attorney is ordinarily subject to a strict interpretation, and is not entitled to that liberal interpretation which is given to informal letters of instructions in commercial transactions. This holding is in accord with the decisions of our own court.

In *Ford Hardwood Lbr. Co.* v. *Clement,* 97 Ark. 522, the court said that where the interests of the parties to the contract conflict under a clause of doubtful purport, it should be construed most strongly against the party who prepared the contract. See also *Gulf Compress Co.* v. *Harrington,* 90 Ark. 256, and *Wood* v. *Kelsey,* 90 Ark. 272. The question of whether or not the contract under consideration should be declared unambiguous as a matter of law is an exceedingly close one; but after a careful consideration of the whole record we are of the opinion that its terms were ambiguous, and that the court sitting as a jury was warranted in finding for appellee.

It is next contended that there is no testimony whatever in the record tending to show that Allen paid the premium to the bank at Monticello, even if that bank had the authority to collect the premium. The letter was received by the cashier. He showed it to Allen, and Allen directed him to charge his account with the amount of the premium note when it should be sent to the bank. At all times thereafter Allen had a much greater sum in the bank than was necessary to pay the premium note. After receiving the second letter, the cashier telegraphed to the German National Bank to pay the note to the cashier of the insurance company. If the bank at Monticello had authority to collect the premium note, it did so and was endeavoring to transfer the amount so collected to the Little Rock cashier of the Life Insurance Company. In short, if the bank at Monticello had the authority to

collect the note it did so and forwarded the proceeds to its principal. The bank evidently did this as a matter of precaution in order to avoid the very situation which has now arisen.

The motion for rehearing will be denied.