SECURITY LIFE INSURANCE COMPANY OF AMERICA v. BATES.

## Opinion delivered June 7, 1920.

1. TRIAL—BOTH PARTIES REQUESTING DIRECTED VERDICT.—Where both parties ask for a peremptory instruction, and do nothing more, they assume the facts to be undisputed, and in effect submit to the trial court the determination of the inferences to be drawn from them.

2. APPEAL AND ERROR—DIRECTION OF VERDICT—REVIEW.—In reviewing the action of the trial court where both parties requested a directed verdict, and nothing more, the Supreme Court is limited to a consideration of the correctness of its finding on the law, if there is any evidence in support of its finding.

3. PRINCIPAL AND AGENT—AUTHORITY OF AGENT.—The general rule is that a principal is bound by all acts of a general agent which are within the apparent scope of his authority, whether they have been authorized or not, and even if they are contrary to express directions.

4. INSURANCE—AUTHORITY OF LOCAL AGENT.—In an action on a life policy, evidence *held* to justify trial court in finding that a local agent possessed the apparent authority to receive an application for a permit to enlist in the army and to go overseas given by the insured's brothers, and to accept the same.

5. INSURANCE—AUTHORITY OF AGENT—FINDING.—In an action on a policy of life insurance, evidence *held* to justify a finding by the trial court that a local agent of the insurer had authority to accept an application for a permit to enlist in the army and to go overseas in the form in which it was presented to him, and that the brothers of the insured were justified in relying upon such agent's promise to procure a permit.

6. INSURANCE—PAYMENT OF PREMIUMS.—Where the agent of a life insurance company agreed to take care of the premiums on a policy of life insurance for the insured, the insurance company can not defend on the ground that an extra insurance premium was unpaid.

Appeal from Yell Circuit Court, Dardanelle District; *A. B. Priddy,* Judge; affirmed.

### STATEMENT OF FACTS.

Amos B. Bates, administrator of the estate of Alvin S. Bates, sued the Security Life Insurance Company of America to recover on a policy of life insurance for $2,000.

The company defended on the ground that the policy had been forfeited because the insured had not complied with the War Clause contained in it.

On the 27th day of August, 1917, the Security Life Insurance Company of America issued a life insurance policy to Alvin S. Bates for $2,000, payable to the insured's administrators, executors or assigns. The policy contained the following clause:

"This policy shall be incontestable after one year from its date, except for nonpayment of premiums and except for naval or military service in time of war without a permit, which are risks not assumed by the company; provided that, in case of the death of the insured while engaged in such service without a permit, the amount payable hereunder shall be the reserve on the policy at date of death. All statements made by insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall void this policy unless it is contained in the application therefor."

Amos B. Bates lived at Sulphur Springs, in Yell County, Arkansas, and was drafted into the army of the United States on September 19, 1917. While in the army at Camp Pike, Arkansas, in November, 1917, Alvin S. Bates sent to his brothers at Sulphur Springs, Arkansas, a paper writing in which he asked the company to issue him a permit to engage in the military service of the United States. The insured and his brothers traded with a mercantile firm in Dardanelle in Yell County, of which Ben Wirt, the agent of the insurance company, was the credit man. Wirt had taken the application for the insurance and had delivered the policy to the insured. In fact, the policy was left by the insured in Wirt's possession. An arrangement was made with Wirt whereby the firm, of which he was the credit man, would pay the premiums as they fell due and charge the same to the account of the Bates brothers. While at Camp Pike, Arkansas, in November, 1917, the insured filled out an application to the company to secure a permit to engage in the military service of the United States and to go be-

yond the limits of the United States, and mailed it to his brothers at Sulphur Springs, Arkansas, and asked them to take it to Ben Wirt and do what was necessary to be done with regard to securing such permit. The brothers of the insured carried the application to Ben Wirt, and, handing it to him, asked Wirt for information as to what should be done in the premises. Wirt looked at the application and handed it back to the brothers of the insured, saying to them, "I will make it all right." Relying on the promises of the agent, the brothers went on home and never took any other steps in the matter. They did not pay the extra premium of $100 on the thousand required of those drafted in the army and going beyond the limits of the United States. They had made arrangements with Mr. Wirt for the firm, of which he was the credit man, to pay the premiums and charge the same to the account of the Bates Brothers. Alvin S. Bates was sent to France, and in July, 1918, was killed in battle while in the military service of the United States. When the second premium became due on August 27, 1918, Mr. Wirt paid the same and charged it to the account of the Bates Brothers. He did not, however, pay the extra premium above referred to. At the time the payments were made it was not known that the insured had been killed in battle during the latter part of the previous month. The brothers of the insured relied wholly upon the promise made by Mr. Wirt to secure the permit for the insured to go with the army to France and to pay the premiums as agreed upon, and for that reason took no further steps in the matter.

Ben Wirt was a witness for the defendant. According to his testimony he was the agent of the insurance company at Dardanelle and secured the application of Alvin S. Bates for a policy of $2,000 in the company. Soon after the United States became involved in the war with Germany, Wirt received instructions from the company that any policy holder who was engaged in the military service of the United States would have to have a permit from the company. Subsequently Wirt was in-

structed that any policy holder who had been granted this permit and went beyond the limits of the United States would have to pay an additional $100 on the thousand. Wirt wrote to the company for blank permits for the policy holders to fill out. The company wrote him that they had no regular forms at that time. Wirt then drew up some forms of his own and sent them to the policy holders. He mailed one of these to Alvin S. Bates at Camp Pike, Arkansas. He instructed Bates to sign the application for a permit and put the number of his company and regiment on it and forward it to the company. The form was never returned to Wirt and he supposed from that that Bates had received it. Wirt wrote to the company and asked if he would be allowed to sign his name to applications for permits and was informed that the insured would have to sign in person. When the brothers applied to Wirt, he told them he would look after the matter for them and make it all right. He had in mind that he had already sent an application to Alvin S. Bates and thought that was sufficient.

On cross-examination Wirt was asked if the Security Life Insurance Company had a general agent at Dardanelle, Ark. He replied, "I represent them as, general agent, local territory." Wirt further stated that it was not only necessary for a policy holder to have a permit to engage in the military service of the United States, but that if the policy holder went overseas in the service, an extra premium of $100 on each thousand was required. The company at first failed to send Wirt any blank forms for permits because it did not have any. Later it did send to him such blank forms. Wirt explained to Alvin S. Bates that he would have to pay an extra premium if he went overseas in the United States army. He told Bates to notify him with regard to the matter before he left for France and that he would take care of the matter for him. Wirt told Bates about the extra premium a few days before Bates went to Camp Pike. Wirt understood that Bates was about to be sent overseas at the time the brothers showed him the application which the insured

had signed for permission to enter the military service. Both sides requested a peremptory instruction and asked for no other instructions.

The court directed a verdict for the plaintiff, and from the judgment rendered the defendant has appealed.

*F. W. Bull* (of Chicago, Ill.) and *T. E. Helm,* for appellant.

The undisputed facts show that plaintiff should not recover except for the reserve value and for the yearly premium paid by mistake after the death of the insured. Wirt was not a general agent and in the matter of lending money was not the agent at all of defendant company. No permit was ever issued by Wirt and he had no authority to issue permits. 85 Ark. 337. Wirt's acts did nothing to render the policy valid or make the defendant liable. It was void except as to the reserve value and the premium paid after death, and a tender was made as to both and refused. No war service permit was issued by the company and the extra premium was not paid as required by the policy and there was no waiver nor estoppel. 122 Ark. 357; 3 Cooley's Briefs on Ins. 2513; 85 Ark. 337; 122 *Id.* 179; *Miller* v. *Ill. Bankers' Assn.,* 138 Ark. 442.

The extra premium for foreign service was not paid and under the policy appellee could only recover the reserve and premium paid after death, as stated above.

*J. B. Crownover,* for appellee.

The death of the insured is admitted and the testimony fails to show that he was "killed while in action" or while taking a part in hostilities or while in the military service. 138 Ark. 442.

The defendant company is estopped. 142 Ark. 132; 206 S. W. 970; 2 May on Ins., § 361. There was no error in giving the peremptory instruction, as there was evidence to sustain it.

Hart, J. (after stating the facts). Where both parties ask for a peremptory instruction and do nothing more, they assume the facts to be undisputed, and in effect submit to the trial court the determination of the inferences to be drawn from them. *St. L., I. M. & S. Ry. Co.* v. *Ingram,* 118 Ark. 388.

In the case at bar each party asked the court for a peremptory instruction and requested no other instruction. This then amounted to a submission of the cause to the court sitting as a jury, and in reviewing the action of the trial court we are limited to a consideration of the correctness of the finding on the law and must affirm the judgment if there is any evidence in support of the court's finding.

Wirt testified that he was the general agent of the company in local territory. The general rule is, that a principal is bound by the acts of its agent within the authority conferred upon him and this includes what is usually necessary to the performance of such duties. In discussing the authority of a general agent in *Oak Leaf Mill Co.* v. *Cooper,* 103 Ark. 79, the court said:

"A principal is not only bound by the acts of the agent done under express authority, but he is also bound by all acts of a general agent which are within the apparent scope of his authority, whether they have been authorized by the principal or not, and even if they are contrary to express directions. The principal in such case is not only bound by the authority actually given to the general agent, but by the authority which the third person dealing with him has a right to believe has been given to him. *Brown* v. *Brown,* 96 Ark. 456. The question in all such cases relative to the acts of a general agent is, not whether the authority of such agent was limited, but whether the person dealing with such agent had knowledge or notice of such limitations of his authority."

Wirt said that he was the general agent, local territory. The words, "local territory," did not limit his powers as agent, but only restricted the territory over which he might exercise the powers of a general agent.

Wirt testified that when the brothers came to him and submitted the insured's application for a permit to go overseas and he told them that it was all right, that he would attend to the matter, he had in mind that he had already sent a blank form to the insured at Camp Pike, to be filled out, and supposed that the insured would fill out the blank form and mail it to the company. In testing, however, the legal sufficiency of the evidence to support the finding of the court, we must consider the evidence in the light most favorable to the plaintiff. It does not appear that Wirt communicated to the brothers of the insured that he had already sent in a blank form to the insured at Camp Pike to be there filled out by him and mailed to the company at its home office. Wirt told the brothers that it was all right and he would attend to the matter. He had already told the insured when he passed through Dardanelle on his way to Camp Pike to notify him in case he got orders to go overseas so that he might attend to the matter of getting a permit for the insured. Wirt also told the insured that he would attend to the matter of paying the premiums.

Under this state of the record the court was justified in finding that Wirt was general agent of the company at Dardanelle and possessed, at least, the apparent authority to receive the application for a permit to enlist in the army and to go overseas, given to him by the insured's brothers and to accept the same.

The court was further justified in finding that he had authority to accept such application in the form it was presented to him, and that the brothers of the insured were justified in relying upon his promise in the premises. Therefore, the evidence was legally sufficient to justify a finding by the trial court in favor of the plaintiff.

Again, it is insisted that the court was not warranted in finding in behalf of the plaintiff because no extra premium was paid as required in case of policy holders who were soldiers in the United States army and had received permits from the company to enter such service and to go over sea and fight in the war with Germany.

It will be remembered that the insured was killed in battle in France in July, 1918, and that his second premium was not due until the 22d of August, 1918. In pursuance of the agreement of the insured and his brothers, Wirt charged the amount of the second premium on the books of the merchant with whom he worked, to Bates Brothers, and remitted the amount to the company. It is true this was done before any of the parties knew that the insured had been killed in battle, but it was done pursuant to an agreement made by Wirt with both the insured and his brothers. Wirt was the credit man for a mercantile firm in Dardanelle and had authority to say when and how much money would be paid by the firm for each customer. He agreed with the insured and his brothers to take care of the premiums on his policy and to pay them to the company and charge the Bates Brothers with them on the books of the mercantile company. Of course, in making the payment to the insurance company he was acting as agent of the Bates Brothers, but in receiving the money he was acting as agent of the insurance company. The Bates Brothers made an arrangement in advance with the mercantile company to secure the money and Wirt promised to apply it to the payment of the premiums as they fell due. Both the insured and his brothers were justified in believing that Wirt would pay the second premium when it fell due, and that he would pay the additional premium under the War Risk Clause. They had made arrangements for the money with the mercantile firm of which Wirt was the credit man and he agreed to send the money in to the insurance company. As general agent of the company, he had the authority to receive the money and send it in. The money was there under his control all the time, and he had nothing to do but send it in to the company. Therefore the court was justified in finding that the insured had done all that was necessary for him to do with regard to paying his premium. *New York Life Insurance Company v. Allen,* 143 Ark. 143, and *Sovereign Camp Woodmen of the World v. Newsom,* 142 Ark. 132.

It follows that the judgment must be affirmed.