## Inter-Ocean Casualty Company v. Banks.

(Decided March 23, 1928.)

### Appeal from Letcher Circuit Court.

Insurance.—Where accident insurance company constituted insured's employer its agent for collecting premiums, paying a commission therefor, and required as part of insured's application a pay order addressed to employer assigning certain amount out of his wages as premium, failure of employer having sufficient money

of insured in its hands to pay premium on due date held not to operate to defeat recovery on policy.

T. E. MOORE, JR., for appellants.

HAWK & LEWIS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and defendant below, Inter-Ocean Casualty Company, is a foreign accident insurance corporation, and its coappellant and codefendant below, West Virginia & Kentucky Insurance Agency, is a corporation organized for the purpose of representing insurance companies as agent, and, as such representative, it employed sub-agents in its territory, a part of which was Letcher county, Ky., the situs of the transactions here involved. The local agent of both defendants was one Begley, and, on and prior to November 3, 1924, the Dudley Coal Company was operating a coal mine at David, Ky., in Letcher county, and the appellee and plaintiff below, Joe Banks, was one of its employees. On the day mentioned plaintiff agreed with Begley to take out an accident policy with the defendant, Inter-Ocean Casualty Company, whereby he was indemnified in limited amounts against certain enumerated injuries and losses.

The policy fee collected by the company was $1, and the monthly premium was $3.75, making the total of the first month's dues $4.75. As we gather from the record, the coal company gave its check for that amount to the insurer on November 19, 1924, which paid the first month's premium, either from November 3, 1924 (the actual dating of the policy), or for one month from the date of the actual payment; but, for reasons hereinafter stated, it will not be necessary to determine that question. That payment by the coal company was taken out of the earned wages of plaintiff for the month of November, and which is shown on settlement sheet between the coal company and plaintiff made and rendered November 30, 1924. The next settlement with plaintiff and the coal company was not due until the end of December, 1924, but on the 11th of that month plaintiff was injured by an accident covered by the terms of his policy, and for which he made claim against defendant insurance company for the sum of $900. It declined to pay any of it, and this action was filed by him against both defendants in the Letcher circuit court to recover that amount.

The answer was a denial with a separate paragraph alleging the lapsing of the policy because of a failure to pay the second monthly premium which defendant alleged was due on December 3, 1924, and that on the 11th of that month, when the accident to plaintiff occurred, the policy had lapsed and was not in force. Appropriate pleadings made the issues, and, upon trial, there was a verdict in favor of plaintiff, upon which judgment was rendered after defendant's motion for a new trial was overruled, and to reverse it this appeal was prosecuted. The only ground urged for a reversal is the failure of the court to sustain defendant's motion for a directed verdict in its favor made at the close of plaintiff's testimony, and also at the close of all the testimony.

Defendant read at the trial a deposition of S. P. Slack, who was secretary and treasurer of the defendant West Virginia & Kentucky Insurance Agency at the time of the transaction here involved, and for ten years prior thereto. He was asked, and answered, these questions:

"Q. Was it customary for the defendant to receive from the Dudley Coal Company each month a check covering the premiums due on policies issued by the defendant to its employees? Explain fully. A. Yes; check covering premiums deducted out of wages.

"Q. What arrangement did the defendant have with the Dudley Coal Company to collect and pay over the various premiums due each month on the policies issued by the defendant to its employees? A. Coal company agreed to collect premiums over its pay roll, and we agreed to pay said company 15 per cent. for making said collections out of the wages of its employees.

"Q. What per cent. or commission did the defendant allow or pay the Dudley Coal Company or its bookkeeper or pay roll clerk to make collection of such monthly premiums by cutting through its office the pay of its employees and remitting the same to you? A. 15 per cent.

"Q. Was not such procedure the usual and customary way of the defendant to collect the monthly premiums due on its various policies of insurance issued, not only to the employees of the Dudley Coal Company, but of other coal companies in Letcher county, Ky.? A. Customary procedure our collections are made by and over *pay rolls* only.

We do no cash business; that is, we do not pretend to sell our policies and collect premiums direct from insured. But the insured may pay his premium direct to our company at Huntington, W. Va.

"Q. On what day of the month of December, 1924, did the defendant company forward to the Dudley Coal Company the monthly report you have filed in your answer to interrogatory No. 2 on direct examination? A. December 20th.

"Q. On what day of the month of December, 1924, did you receive said report back from the Dudley Coal Company? A. Received December report on January 23, 1925."

Plaintiff, and all other witnesses who testified in the cause, stated without contradiction that such method prevailed, not only at the Dudley Coal Company mines, but also at all others in that vicinity. In further substantiation thereof, defendants demanded and required of plaintiff as a part of his application for the policy, and which they attached to it as a part of the policy, this "pay order," addressed to the coal company by plaintiff:

"For value received I hereby assign to the West Virginia & Kentucky Insurance Agency, Huntington, West Virginia, agents for the Inter-Ocean Casualty Company, $4.75 out of my wages for the current month in payment of policy fee and premium on insurance applied for to-day in the said company, and $3.75 out of each future month's wages in payment of the monthly premiums necessary to keep my insurance in force, which sums you are authorized to pay to said agents."

At the time plaintiff sustained his injuries he had earned during the current (December, 1924) month $38.06. He was charged with an overdraft from the preceeding month of $3.53 and coupons to be used at the commissary store amounting to $30, and with a physician's fee of 50 cents, making a total charge of $34.03, and leaving as a balance due him of $4.03 or 28 cents more than his monthly premium of $3.75, which amount was collected by his brother long after he sustained his accident, and while he was in the hospital, which was done without his knowledge, direction, or consent.

From what has been said it is perfectly manifest that the coal company was, not only made by the terms

of the policy itself (the "pay order" which was made a part of it) the collecting agent of defendants, but uncontradicted proof in the case, as we have stated, showed that such was the defendant's customary method of collecting its monthly premiums, and, on account of which, as stated by the witness Slack, defendants did not pretend to sell their policy and *collect* their premiums "direct from insured." As we have seen, the paid collecting agent (the coal company), at the time of the accident, had in its hands, over and above all the sums due it from plaintiff, the amount of $4.03, which was more than sufficient to pay the second monthly premium on the policy, and, according to the customary settlements made with it and defendants, the current premiums not due to be paid by it until the last of the current month, or on December 31, 1924. If defendant's selected collection agent defaulted for any reason in the payment of that premium, such defalcation may not be charged to plaintiff; nor can the agent's failure to charge plaintiff on its books with the amount of the insurance premium, which it is argued it was its duty to do, operate to the detriment of plaintiff, who left that amount with it, and which it was its duty to pay to defendant in satisfaction of the current premium. However, the time for such payment by it, we repeat, under the customary method of dealing, did not arrive until the last day of December, 1924, when its duty to pay became absolute. If before that time, or afterwards, it diverted the amount of the premium so left with it to other purposes, and failed to pay it to defendant, such derelictions on its part cannot be charged to plaintiff.

It is our conclusion, therefore, that it was the duty of the court to direct a verdict in favor of plaintiff instead of one in favor of defendant, but, since the same verdict was rendered under the instructions given, there is no course open to us but to affirm the judgment, which is accordingly done.