CONTINENTAL CASUALTY COMPANY *v.* BAKER.

Opinion delivered March 3, 1930.

*Powell, Smead & Knox,* for appellant.

*Harry C. Steinberg* and *G. E. Snuggs,* for appellee.

SMITH, J. On January 21, 1927, the appellant insurance company, hereinafter referred to as the company, issued to appellee a sickness and accident insurance policy covering the year expiring January 20, 1928. Under the terms of the policy appellee was indemnified against sickness or accident in the sum of $80 per month for such time as he should be unable to follow his usual avocation on account of sickness or accident, with double indemnity at the rate of $160 per month during such time as he should "be resident in a duly licensed hospital, said double indemnity not to exceed, however, a period of two months."

Attached to the policy, and made a part thereof, was an agreement, referred to as a "rider" or a "paymaster's order," which was directed, "To the paymaster of my employer," which recited that the insured was employed as a freight conductor by the Missouri Pacific Railroad Company, and had made application for the insurance, and that, "This order is given to provide for the payment of the premium thereon, which you are authorized and requested to deduct from my wages in ten installments as hereinafter designated, pay to the company for me, and charge against my pay account for services rendered or to be rendered, to my employer on whom this order is drawn." This paymaster's order, which was executed in duplicate, further directed that, "if for any reason whatever you fail to make deduction of any installment from the wages of the period hereinafter designated for that purpose, you are further authorized and requested at the option of the company to deduct and pay the defaulted installment from any of my subsequent wages. * * * The amount of my said premium is $77.60, and it is to be deducted from

my wages for the months here listed in ten installments as follows:

"(1)  March, 1927 ...................................................$7.75
"(2)  April, 1927 ...................................................... 7.75
"(3)  May, 1927 ........................................................ 7.75
"(4)  June, 1927 ...................................................... 7.75
"(5)  July, 1927 ....................................................... 7.75
"(6)  August, 1927 ................................................. 7.75
"(7)  September, 1927 ........................................... 7.75
"(8)  October, 1927 ................................................ 7.75
"(9)  November, 1927 ........................................... 7.75
"(10)  December, 1927 ....................................... 7.80"

It appears, therefore, that no part of the premium, which was payable in ten equal installments, was due until March, 1927, when the first installment was payable. But before that time, to-wit:  on February 22, 1927, the insured became ill and totally disabled because of an abscess on his lungs, and was thereafter confined in the hospitals of the railroad company, which were duly licensed hospitals, until the latter part of June, 1927.

Proof of this illness was made, and in satisfaction of its admitted liability therefor the company made payments as follows:

On March 28, 1927.............................................$ 80.00
On April 22, 1927............................................... 100.00
On May 21, 1927................................................. 100.00
On July 18, 1927................................................. 232.00

On the reverse of the check for $232 was written the following receipt:  "Received of the Continental Casualty Company $512 in full compromise, payment, satisfaction, discharge and release of any and all claims that I myself, my heirs, executors, administrators, assigns or beneficiaries now have or may hereafter have against said company, under policy numbered 6,321,637 for or on account of injuries or illness sustained by me on or about 2-18-27, and any loss that may hereafter result from said injuries or illness."  This receipt was signed by appellee, the insured.

Appellee was discharged from the hospital on June 26, 1927, and on July 1 resumed work, but in the capacity of brakeman on a passenger train, at $5 per day, and this employment continued up to and including the 11th day of July, when he sustained a relapse and again became totally disabled, and on July 14 was readmitted to one of the railroad company's hospitals where he remained for about four or five months, and his disability continued until January 5, 1928, and this suit was brought to recover for this period of time.

At the conclusion of all the testimony each side asked a directed verdict, and neither side asked any other instructions, and a verdict was directed for the plaintiff for the amount sued for. Therefore, under our practice the case will be treated as having been heard by the court sitting as a jury, and the judgment rendered pursuant to the instruction so given will be affirmed if the testimony, viewed in its most favorable light, is sufficient to support the judgment.

When appellee sent in the last proof of his first illness in the latter part of June, 1927, he wrote a letter to the company directing that the amount of all unpaid installments or premiums be deducted from the amount of the indemnity then due him, but when the check therefor came dated July 18, 1927, this had not been done, and the check was for the full amount of indemnity which had not been paid, with no deductions for the past due and unpaid installments of premium for the months of March, April, May and June. The July installment was then due, but was not delinquent.

It is the insistence of the company that the receipt signed by the insured, set out above, was a full acquittance of all liability that had then accrued under the policy, and that there was no subsequent liability therefor, for the reason that default had been made in the payment of the installments of premium, the policy providing that it should be void if these installments were not paid.

We think the court below was correct in holding that the receipt which appellee signed was not intended to and did not cancel the policy, but was a mere acquittance of all demands for indemnity under the policy for the first illness and disability, and that the policy continued in force as a subsisting contract of insurance unless it had forfeited on account of the nonpayment of the premium. Whether this had occurred is the real question in the case.

It will be remembered that, before the last remittance was made by the company in the discharge of the liability for the first illness, direction had been given to the company to deduct the installments of premiums then due and unpaid. The company would have had the right to do this in the absence of direction from the insured, but it did not do so, and it could not treat the policy as having forfeited for the nonpayment of installments of premium while it had it in its own hands a much larger amount of money than was required to pay the installments. It is so held in the following cases: *Security Life Ins. Co.* v. *Matthews,* 178 Ark. 775, 12 S. W. (2d) 865: *Pfeiffer* v. *Missouri State Life Ins. Co.,* 174 Ark. 783, 297 S. W. 847, 54 A. L. R. 600; *Knights of Pythias* v. *Sanders,* 174 Ark. 279, 295 S. W. 25; *Missouri State Life Ins. Co.* v. *Miller,* 163 Ark. 480, 260 S. W. 705; *Mutual Life Ins. Co.* v. *Henley,* 125 Ark. 372, 188 S. W. 829; *American Nat. Ins. Co.* v. *Mooney,* 111 Ark. 514, 164 S. W. 276; *Union Central Life Ins. Co.* v. *Caldwell,* 68 Ark. 505, 58 S. W. 355.

It is also to be remembered that the company had in its possession when the last remittance was made an order on the paymaster of the railroad company for so much of appellee's salary as was necessary to pay all installments of premium then due, and, as he had worked eleven days at $5 per day, there was due him from the railroad company more money than was required to pay the installments of premium then due. The company, therefore, had no right to cancel the policy while it held

this order, which was in effect an assignment *pro tanto* of his salary.

Now, it is true, as the company insists, that on the 28th or 29th of July the railroad company remitted to appellee the whole amount of his wages earned in the month of July, all of which he kept, but it is not to be assumed from this fact that the paymaster's order would not have been honored had it been presented. Moreover, it is also true that, before this payment was made by the railroad company of the July wages, appellee had been disabled by sickness from and including the 12th day of July, and had been resident in a licensed hospital from and including the 14th day of July, so that there had accrued to him, before the railroad company paid him his wages, out of which the insurance company had the right and was under the duty to collect the premium, an amount of insurance indemnity exceeding the installments of premium then due.

We conclude therefore that the court below was warranted in finding that appellee was never in default in the payment of his installments of premium, and that the policy did not lapse, and the judgment must therefore be affirmed, and it is so ordered.