The Equitable Life Assurance Society of the United States v. Marie Schmidt Mittelhauser, a widow.

178 So. 559.
Opinion Filed December 8, 1937.
Rehearing Denied February 14, 1938.

*Shutts & Bowen, Joseph F. McPherson* and *E. S. Quick,* for Plaintiff in Error;

*Blackwell & Knight, Dewey Knight* and *W. Clinton* Green, for Defendant in Error.

TERRELL, J.—On July 29, 1930, Ben Mittelhauser contracted with the plaintiff in error for a policy of life insurance in the face sum of $5,000.00, with double indemnity in the event the insured came to his death by accidental means. The premiums were payable quarterly in October, January, April, and July in the sum of $69.30 with thirty-one days' grace. Mittelhauser was killed in an automobile

accident December 9, 1931. His wife, Marie Schmidt Mittelhauser, claimed the face of the policy with double indemnity, the plaintiff in error contending that the policy had lapsed, declined payment, hence this action.

To the declaration revealing the foregoing facts, the defendant insurance company proffered three pleas, the third of which was abandoned. The first plea alleged that the policy lapsed for failure to pay the premium in July, 1931, and the second plea is identical with the first except that it alleges failure to pay the premium due in October, 1931.

Plaintiff filed seven replications to defendant's pleas, the fourth and sixth were withdrawn and the third went down under demurrer. The other replications in substance allege that at the time of the execution of the policy K. H. Turner, who wrote it, was the agent of defendant, had power to collect premiums and was an officer in the bank where the insured carried his banking account, that when the policy in question was executed, the said Turner agreed with the insured that he would, as such bank officer, cause to be deducted from the assured's account the amount of each premium upon its due date and as agent of the company, would remit the same to the defendant, that on the due date or within the period of grace thereafter, the assured had on deposit in the bank in which Turner was an officer a sum sufficient to pay said premium, that the said Turner agreed with the assured that in the event his (assured's) checking account was not sufficient to pay any premium on its due date, he (Turner) would pay said premium and charge assured's checking account therewith, that pursuant to said agreement, the said Turner did on June 5, 1931, deduct from the assured's checking account in his possession and remit to the insurer the amount necessary to pay the premium due May 29, 1931, that on July 29, 1931, and October 29, 1931, or within the days of grace following each

of said dates, the said Turner had in his possession in the checking account of the assured sufficient funds to pay said premiums and that on November 7, 1931, he (Turner) told the defendant in error that he·had taken care of the July and October, 1931, premiums by payment and charging them to the checking account of the assured.

By rejoinder, the defendant denied every material allegation of the replications including the authority of Turner to make the contract alleged and relied on by the plaintiff. The rejoinder also interposed as further defense the provision of the policy to the effect that no other person except named officers of the company had the power to make or modify any contract on behalf of the insurer or to waive any of its rights in the policy in question or shall any such waiver or modification, if made, be valid or binding unless in writing. The authority of Turner to collect premiums in manner contended was also challenged as was the legality of paying them anywhere but at the home office of the company. A demurrer to the rejoinders was in part sustained but the cause went to trial on the issue so made resulting in a verdict and judgment for the plaintiff which is brought here for review on writ of error.

Numerous questions are urged for reversal which in the main, grow out of the alleged agreement between Turner and the assured with reference to paying the premiums including the admission of testimony with reference to said agreement. That part of the final judgment allowing attorney's fees was also challenged as being erroneous.

It would require an opinion of great length to answer all these questions. They are all resolved by determination of the validity of the alleged agreement between Turner and the assured with reference to the payment of the premium.

If we were limited to the terms of the policy to determine this question, we would be compelled to answer it in the

negative because no such authority can be gleaned from it. Regardless of any provision of the policy, Section 4256, Revised General Statutes of 1920, Section 6207, Compiled General Laws of 1927, fixes the status of insurance agents for certain purposes under the law of this State and the conduct of Turner, if proven, made him an agent of the company regardless of the terms of his contract.

But aside from the statute and the lack of authority on the part of Turner to make such an agreement with the assured, if it was in fact made and approved by the company it thereby became binding on it as much so as if written in the contract. It is quite true that Turner denied making any such agreement or any part of it but there was positive evidence that he did make it and under the issues made by the pleadings, the matter of whether or not it was actually made presented a conflict for the jury to resolve.

The evidence shows without contradiction that Turner was an officer of Stuart Central Farmers' Bank when the policy was written and when the agreement was made, that the premiums for July, 1930, and January and April, 1931, were paid on Turner's voucher and cashier's check putting the company on notice that these premiums were being paid through the bank which was irregular. The evidence also shows that the accused had a line of credit at the bank and that he actually had funds in the bank on the due date or before the expiration of the grace period ample to pay the July and October, 1931, preimums. Turner did not notify the assured of any limitations on his contract to sell insurance, the assured had a right to rely on his guaranty and under the facts shown, his conduct in making the contract in question, was approved by the company.

The courts of this country have frequently approved agreements between the insured or his agent and the insurer or his agent whereby the premiums should be deducted from

the insured's salary or his bank account or other fund controlled and owned by him. Continental Casualty Co. v. Baker, 181 Ark. 156, 25 S. W. (2nd) 23; Inter-Ocean Casualty Co. v. Banks, 223 Ky. 758, 4 S. W. (2nd) 709; Ocean Accident & Guaranty Corporation, Limited, v. Emporia Telephone Co., 139 Kan. 106, 29 Pac. (2nd) 1084; Security Life Insurance Co. v. Bates, 144 Ar. 345, 222 S. W. 740; Illinois Banker's Life Assn. v. Dowdy, 149 Ark. 72, 231 S. W. 183; Baker v. Michigan Mutual Protective Assn., 118 Mich. 431, 76 N. W. 970, 3 Couch on Insurance 2315.

Section 6207, Compiled General Laws of 1927, *supra,* does not deprive the insurance company of all power to place restrictions on its agents. It makes anyone who collects, receipts for, and receives money to be transmitted to the insurance company, its agent for that purpose. If the funds are collected and transmitted in an irregular manner contrary to the rules of the company, it must act promptly to correct the error. If it approves a wrong course of conduct on the part of its agent by accepting benefits to it until injury is done another, it is then too late to raise the question. Southern States Fire Insurance Co. v. Vann, 69 Fla. 549, 68 So. 647.

There is still another reason why the judgment below in this case should be affirmed. It is not denied that the contract of insurance was executed. It is shown beyond question that some of the premiums were paid irregularly. As to the manner of paying others, there is some question, but the jury resolved this against the company. It is shown that the assured had funds to pay all of them. If Turner promised to pay them as contended and as the jury was convinced, it would be a gross injustice to the assured's beneficiary to now deny her relief. Turner was a third party to the transaction and being the defendant's agent, the defendant put it in his power to do the insured the

wrong. The law is settled that under such circumstances when one of two innocent persons must suffer for the wrong of a third person, he who gave the power to do the wrong must suffer the consequences.

Assignments based on the admission of illegal evidence are not discussed in this opinion. They have been considered and we are impressed that incompetent evidence went to the jury, but there was ample competent evidence to prove the contract between Turner and the assured and since the case is disposed of on this question, the incompetent evidence was harmless.

In the matter of the allowance of attorney's fees, little need be said. Section 6220, Compiled General Laws of 1927, provides for attorney's fees in cases of this kind. We are convinced, however, that the amount allowed, $1,800.00, was too much. The face of the policy was $5,000.00; it was doubled not for any wrong the company did, but by the fortuitous circumstance of accidental death which was not challenged. It is not shown that this fact in any respect enlarged the factors that determine the amount of attorney's fees. This Court is not averse to awarding ample fees to attorneys when the record warrants. Mizner Land Corporation, et al., v. Abbott, et al., decided March 12, 1937. The record in this case does not warrant a fee in excess of $1,000.00.

The judgment below is accordingly affirmed except as to the allowance of attorney's fees. As to this, it is reversed for the purpose of fixing a fee of not exceeding $1,000.00.

Affirmed in part; reversed in part.

WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.

ELLIS, C. J., not participating because of defective eyesight.