375 So.2d 34 (1979)
Larry CORBETT, As Personal Representative of the Estate of Margaret Corbett, Deceased, Appellant,
v.
SEABOARD COASTLINE RAILROAD COMPANY, Appellee.
No. 78-98.
District Court of Appeal of Florida, Third District.
September 18, 1979.
Rehearing Denied October 9, 1979.
*35 Spence, Payne, Masington & Grossman, J.B. Spence, Podhurst, Orseck & Parks, Walter H. Beckham, Jr., and Joel D. Eaton, Rossman & Baumberger, Robert D. Peltz, Lane, Mitchell & Harris, Miami, and James S. Usich, Coral Gables, for appellant.
Goodwin, Ryskamp, Welcher & Carrier, Kenneth L. Ryskamp, Adams & Ward, Robert C. Ward, Miami, for appellee.
Before PEARSON, HENDRY and HUBBART, JJ.
PEARSON, Judge.
The appellant, Larry Corbett, is the personal representative of the estate of Margaret A. Corbett, deceased. Margaret A. Corbett was killed as a result of a collision between an automobile in which she was a passenger and a railroad train operated by the Seaboard Coastline Railroad Company. The collision occurred at an intersection in Dade County, Florida. Margaret Corbett was riding home from school with Renee Glover, who was driving the car. Three other passengers were in the car. They are all parties to these appellate proceedings and will be referred to by name as their position in the appeal is discussed. Larry Corbett's action was on behalf of himself as personal representative of his deceased daughter's estate and as her father, as well as for the benefit of his wife, Margaret Corbett, the mother of the child. In this action, Seaboard was a defendant, as were Renee Glover and her insurance company.
The other three passengers[1] in the car were LaWanda Bennett, Angela Cobbs, and Edna Stamps. The cases involving the claims of Corbett and of the other passengers were consolidated for trial, and the cause proceeded to be heard before a jury on the issues of liability and damages in the Corbett case. As to all other plaintiffs, the cause was tried solely on the issue of liability.
In the Corbett case, the jury returned a verdict finding that the railroad was guilty of 75% causative negligence, and the driver of the car, Renee Glover, guilty of 25% causative negligence, and that Margaret Corbett was not guilty of comparative negligence. In the Glover case, the jury assessed the negligence as against the railroad, 75%; and plaintiff Glover, 25%. In the Bennett case, the jury assessed the negligence as against the railroad, 75%; the defendant Glover, 20%; and the plaintiff Bennett, 5%. In the Stamps case, the jury assessed the negligence as against the railroad, 75%; the defendant Glover, 20%; and the plaintiff Stamps, 5%. In the Cobbs case, the jury assessed the negligence as against the railroad, 75%; Renee Glover, 20%; and the plaintiff Cobbs, 5%.
In the Corbett case, damages under the wrongful death act were returned for the estate of the deceased minor in the amount of $1,775.86. Damages were awarded for the benefit of the mother in the amount of $500,000, and for the benefit of the father in the amount of $500,000. The defendant railroad moved for a new trial and for a judgment notwithstanding the verdict in accordance with prior motions for directed verdict and for remittitur; the motions were denied. The court granted the motion for the entry of a remittitur or in the alternative for a new trial on damages. The order, in its entirety, provides:
THIS CAUSE came on to be heard before the court upon Motion for Entry of a *36 Remittitur or, in the Alternative, for a New Trial filed by Defendant SEABOARD COASTLINE RAILROAD COMPANY and Plaintiff's Motion for Clarification of Court's Order With Respect to Remittitur and New Trial. The court having heard argument of counsel and being advised in the premises, finds that the verdict based on the evidence adduced at this trial relative to the mental pain and suffering sustained by the mother and father of the deceased minor is contrary to the manifest weight of the evidence. The damages were so excessive and unreasonable as to convince the court the jury was actuated in arriving at its verdict by passion, partiality, prejudice, or other improper influence. It is accordingly,
ORDER AND ADJUDGED that Defendant's motion is granted and a remittitur is hereby directed in the amount of $250,000 as to each parent, and that a new trial on the issue of damages be and the same is hereby granted unless each parent, through the personal representative, shall agree to a remittitur in the amount of $250,000 on the verdict for the benefit of each respective parent. The effect of this remittitur is to reduce the verdict for the amount of each parent from $500,000 to $250,000.
The Plaintiff shall have 20 days from the date of this order to file his election to accept or reject the remittitur and if said remittitur is accepted the Motion for New Trial on damages is denied.
Should the Plaintiff file a written election to reject the remittitur prior to the expiration of the 20 days, or if the Plaintiff does not file an election to accept the remittitur within 20 days, then in such event a new trial be and the same is hereby granted upon the issue of damages only.
Plaintiff Corbett refused to accept the remittitur and has appealed from the new trial order resulting from the refusal of the court-ordered remittitur.
Seaboard has cross-appealed with regard to certain rulings during the trial affecting the liability issue. Plaintiff Bennett has cross-appealed (1) adopting plaintiff Corbett's position on the Seaboard's appeal, and (2) urging that it was error to allow the question of Bennett's comparative negligence to go to the jury. Plaintiff Cobbs has cross-appealed and adopts cross-appellants Corbett's position on all points. Plaintiff Stamps, in her cross-appeal, urges the same error, i.e., that it was error to allow the question of her comparative negligence to go to the jury. Appellee Glover joins in the argument presented by Seaboard relating to the remittitur and new trial, but urges that there was no error upon the evidentiary ruling, argued as error by Seaboard, excluding evidence that Glover, the driver, did not have a driver's license. It will be most convenient to divide the discussion of the various issues involved on the basis of:
I. The Corbett appeal with regard to the remittitur and resulting new trial.
II. Seaboard's appeal seeking a new trial on the liability issue.
III. The issue of the comparative negligence of the passengers which is raised by the appeal of Bennett, Cobbs and Stamps.

I.
The appeal of Larry Corbett, as personal representative and on behalf of himself, as father, and of his wife, as mother, of the deceased, Margaret A. Corbett, argues that the trial court improperly entered a remittitur, which resulted in the new trial, in that the court substituted its judgment on damages for that of the jury. The previously-quoted order of the trial court in essential portion finds
"... that the verdict based on the evidence adduced at this trial relative to the mental pain and suffering sustained by the mother and father of the deceased minor is contrary to the manifest weight of the evidence. The damages were so excessive and unreasonable as to convince the court the jury was actuated in arriving at its verdict by passion, partiality, prejudice, or other improper influence."
*37 There are competing rules on the error that is committed by a trial judge when he determines that a verdict is excessive and enters a remittitur. The first, stated affirmatively, is that it is within the discretion of the trial judge to set aside a jury award and enter a remittitur when the verdict is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may operate. See Bould v. Touchette, 349 So.2d 1181 (Fla. 1977); and School Board of Palm Beach County, Inc. v. Taylor, 365 So.2d 1044 (Fla.4th DCA 1978). The second, stated affirmatively, is that it is the duty of the jury to assess the worth of intangible damages, such as pain and suffering, and it is error for the trial judge to interfere with that verdict in the absence of a showing that it is not supported by the record or that the jury was influenced by matters outside its proper consideration. See Wackenhut Corporation v. Canty, 359 So.2d 430 (Fla. 1978); and Laskey v. Smith, 239 So.2d 13 (Fla. 1970).
Therefore, we must determine whether it appears from this record that (1) the verdict as rendered by the jury was so large as to exceed the limits of reasonable range; (2) the amount found by the jury has some support in the record; or (3) there were any indications that the jury was influenced by improper considerations.
The record is interminable and we have not read it all. But guided by the references of the parties to the portions that they find supportive to their positions, we are confident we have examined the relevant evidence. Having done so, we are unable to say with any assuredness that the verdict exceeded the limits of the reasonable range. The trial judge's order is not helpful in this regard for he simply finds the damages to be "excessive and unreasonable." The railroad does not help us much by adding that the verdict is "monstrous," nor Corbett by his characterization of the verdict as a "proper jury determination and evaluation of damages." Accordingly, we determine that the record does not show that the verdict exceeded the limits of the reasonable range.
Seaboard places its emphasis on a contention that the jury's verdict was not supported by the record. It points out that the evidence on mental pain and suffering consists entirely of the statements of the parties that they suffered mental pain and anguish because of the death of their daughter and the corroborating statements of lay witnesses that they observed this suffering and that it had a reasonable basis in a beautiful family relationship. The railroad argues therefrom that the court correctly determined that there was a lack of evidence to support the one million dollars in damages found by the jury.
We think, by implication, that the railroad is arguing that because there is no expert testimony or exceptional circumstances, as in Metropolitan Dade County v. Dillon, 305 So.2d 36 (Fla.3d DCA 1974), or Compania Dominicana de Aviacion v. Knapp, 251 So.2d 18 (Fla.3d DCA 1971), that the jury had no basis for the damages awarded. The record shows suffering from the loss of a child. It is not elaborated upon, but is corroborated. We think that the record adequately supports the damages awarded. We find support in both the Dillon and Knapp cases, where the court determined this matter to be particularly within the province of the jury to decide.
The trial judge found that the jury must have been influenced by matters outside its proper consideration because he found that "... the jury was actuated in arriving at its verdict by passion, partiality, prejudice, or other improper influence." This is strong language, but unfortunately the order gives the amount of the verdict as the sole basis for the trial judge's disagreement with the jury. This certainly is an area where trial judges should heed the direction of the Supreme Court of Florida that:
"Although an order for new trial need not incant language to the effect that the verdict is against the manifest weight of the evidence or was influenced by considerations outside the record, the order must give reasons which will support one of these two conclusions so that it will be *38 susceptible of appellate review. See Thompson v. Williams, 253 So.2d 897 (Fla.3d DCA 1971). Orders granting motions for new trials should articulate reasons for so doing so that appellate courts may be able to fulfill their duty of review by determining whether judicial discretion has been abused.
"Since the order for new trial is deficient because it does not contain reference to the record in support of its conclusion that remittitur of the punitive damage award is necessary to cure the excessiveness of the punitive damage verdict (its basis for requiring new trial), we have made an independent review of the record in search of support of that conclusion." Wackenhut Corporation v. Canty, 359 So.2d 430, 435 (Fla. 1978).
We have followed the example of the Supreme Court and searched the record in the light of the briefs filed and the extended oral argument granted. We find no basis for the trial judge's order for a new trial unless remittitur is accepted other than the fact that he disagreed with the amount of the verdict. Mere disagreement is not enough. See White v. Martinez, 359 So.2d 7 (Fla.3d DCA 1978). We conclude that the order for remittitur and consequent order for new trial are not supported by the record and the applicable law. Accordingly, the order granting new trial will be reversed unless consideration of the cross-appeals requires a new trial.

II.
The cross-appeal by Seaboard seeks a new trial on the liability issue. It urges error upon the denial of its motion and argues that two evidentiary rulings of the trial court constitute reversible error. First, it is urged that the trial court erred in admitting testimony regarding prior malfunctions of the railroad signal system.
The trial court permitted plaintiff to call witnesses who testified that on prior occasions the signals at the crossing in question did not function properly. This testimony was that the signals operated at times when no train was approaching and that a train had approached but the signal lights had not worked. Only three of these witnesses testified that they reported the malfunctioning to the railroad company. There was evidence from the testimony of one of the railroad's signal maintenance employees that he had received several complaints of malfunctioning lights at that crossing from the yard office or the train crews.
It is urged that the law as developed by the Supreme Court of Florida in Lawrence v. Florida East Coast Railway Company, 346 So.2d 1012 (Fla. 1977); Friddle v. Seaboard Coast Line Railroad Company, 306 So.2d 97 (Fla. 1974); and Perret v. Seaboard Coast Line Railroad Company, 299 So.2d 590 (Fla. 1974), requires that the railroad have knowledge of prior malfunctioning for the evidence of such malfunctioning to be admissible.
Without determining that such a rule is properly developed from the cases cited, we hold that it would be inapplicable here because there was extensive testimony that these signals had malfunctioned over an extended period of time and that the railroad had actual, as well as implied, knowledge of the malfunctioning. A part of the charged negligence of the railroad was that the warning signals were not properly maintained. The testimony showed that the signals did not operate at the time of the accident. The evidence further showed that the malfunctioning had continued at least intermittently for a long period of time. We think that the evidence was relevant and was properly admitted. See Perret v. Seaboard Coast Line Railroad Company, 299 So.2d 590 (Fla. 1974); and Reese v. Seaboard Coast Line Railroad Co., 360 So.2d 27 (Fla.4th DCA 1978).
The second evidentiary ruling which the railroad urges as an error requiring a new trial on the liability issue is that the trial judge excluded evidence that the driver of the car, Renee Glover, did not have a driver's license. Miss Glover was 16 years old. She was driving the car with her father's permission. It will be recalled that in these cases the jury uniformly found the *39 railroad to be 75% negligent, Miss Glover either 25% (in her own case and the case of the deceased Miss Corbett), or 20% (in the case of the passengers, except the deceased Miss Corbett).
The evidence was such that the negligence assigned to the railroad must have been upon a finding that the train approached the dangerous crossing at an excessive speed and that the railroad negligently maintained the crossing warning signals so that they did not operate properly at the time of the accident. The negligence assigned to the driver must have been that she approached the crossing at an excessive speed and was inattentive in that she failed to heed the warnings that were given.
The parties agree that the test as to the admissibility of the evidence depends upon the existence of a causal connection between the failure to have a license and the alleged negligence causing the accident. Goldner v. Lentin, 96 So.2d 553 (Fla.3d DCA 1957); and see Dorsett v. Dion, 347 So.2d 826 (Fla.3d DCA 1977). In each of these cases the license invoked was in existence and was a restricted license. In Goldner, the evidence was excluded; in Dorsett, it was admitted; in each case, no error was found. The causal connection test was quoted in Goldner. Upon a review of the facts in this case, we think that the trial judge should have admitted the evidence as possibly causally connected to the negligence of the driver of the automobile.
We hold that the failure to admit the evidence was in this case harmless error. The evidence clearly showed the driver's youth and relative inexperience. The evidence excluded would, at most, have been cumulative. It was not particularly damaging in its nature, and its causal connection to the circumstances of the accident was by inference only. We hold that the exclusion of this evidence did not result in a "miscarriage of justice." See Section 59.041, Florida Statutes (1977); Rance v. Hutchinson, 131 Fla. 460, 179 So. 777 (1938); and Atlantic Coast Line Railroad Company v. Ganey, 125 So.2d 576 (Fla.3d DCA 1970). Cf. Equitable Life Assur. Soc. of United States v. Mittel-Hauser, 130 Fla. 794, 178 So. 559 (1937).

III.
The last point to be discussed is whether the trial judge erred in refusing to direct a verdict for the various plaintiffs upon the issue of the passengers' comparative negligence. At the close of all the evidence, Bennett, Stamps and Cobbs, all of whom were passengers in the car, moved for a directed verdict on the issue of comparative negligence. The trial judge first announced that he would grant these motions, but later refused to do so. The comparative negligence of each of these plaintiffs was submitted to the jury. In the Bennett case, the jury assessed the negligence of the railroad at 75%; the defendant Glover, 20%; and plaintiff Bennett, 5%. In the Stamps case, it was railroad, 75%; Glover, 20%; Stamps, 5%. In the Cobbs case, it was railroad, 75%; Glover, 20%; Cobbs, 5%. Each plaintiff renewed her motion after the verdict, and the motions were denied. Each argues on appeal that the evidence was insufficient to present the issue of the passengers' negligence to the jury. The railroad, on the other hand, points out that there was evidence that the driver, Glover, approached the crossing at a fast speed without showing down or taking any action indicating notice of the crossing or the approaching train. One of the passengers, Corbett, did shout a warning moments before the impact. That passenger was found not to have been negligent. That passenger was seated in the front seat. These three passengers were seated in the back seat.
The basic law in Florida upon a passenger's duty to take action has been laid down by the Supreme Court of Florida in Knudsen v. Hanlan, 160 Fla. 566, 36 So.2d 192 (1948):
"... a guest riding in an automobile is entitled, save under exceptional circumstances, to trust the vigilance and skill of his driver, unless such occupant knows, or by the exercise of ordinary and reasonable care should know from the *40 circumstances of the occasion, that the driver is not exercising that degree of care in the operation of the vehicle compatible with the safety of his passenger. In such case it becomes the duty of the guest to make some reasonable attempt through suggestion, warning, protest or other means suitable to the occasion, to control the conduct of the driver. However, before the duty to warn, protest, or take other such action suitable to the circumstances of the case, arises, it is necessary that the occupant should know or have reason to know that it is reasonably essential to his own safety to attempt to warn or to control the conduct of the driver, and there must be sufficient time and opportunity for the guest to give warning or make protest before the happening of the accident ..."
See also Bessett v. Hackett, 66 So.2d 694 (Fla. 1953); Morse Auto Rentals v. Papandrea, 180 So.2d 351 (Fla.3d DCA 1965).
We hold that the evidence in the cases now before us was insufficient to bring into play the exception to the general rule. There is nothing in the evidence when viewed in the light most favorable to the railroad's position to call into action a duty of the passengers to protest for their own safety. The evidence of the driver's operation of the car prior to a close approach to the crossing was that the car was operated in a careful manner. It is likewise clear that the shouted warning was of no help in avoiding the accident, and there is no evidence that the passengers in the back seat could have been aware for even a short period of time that danger would result from the continued operation of the car in any particular manner. The instant case is distinguished from the cases relied upon by the railroad in that in each of the cited cases the passenger was shown to have knowledge of an approaching or present danger in time to make a protest. Therefore, that portion of the liability judgment in the suits brought on behalf of LaWanda Bennett, Edna Stamps and Angela Cobbs is reversed as to the finding of comparative negligence charged to each plaintiff.
In particularization, the following is the decision of this court upon these consolidated appeals:
(1) The order entering remittitur and consequent order for new trial appealed by Larry Corbett as personal representative and upon behalf of the parents of the deceased Margaret Corbett is reversed, and the cause remanded with directions to reinstate the judgment entered upon the jury verdict.
(2) The judgments appealed by the Seaboard Coastline Railroad Company are affirmed except as otherwise appears in this judgment.
(3) The judgments appealed on behalf of LaWanda Bennett, Edna Stamps and Angela Cobbs are affirmed in part and reversed in part, and remanded for further proceedings thereon.
Affirmed in part; reversed in part and remanded.
NOTES
[1] There was an additional passenger whose cause is not involved in this appeal.