487 So.2d 1029 (1986)
TREND COIN COMPANY, d/b/a the Trendline, and Precious Metal Brokers, Inc., Petitioners,
v.
HONEYWELL, INC. and Aetna Casualty & Surety Company, Respondents.
No. 65532.
Supreme Court of Florida.
February 27, 1986.
Rehearing Denied May 30, 1986.
Larry B. Stewart and James B. Tilghman, Jr. of Stewart, Tilghman, Fox & Bianchi, Miami; and Lawrence Fuller of Fuller and Fingold, Miami Beach,, for petitioners.
James E. Tribble of Blackwell, Walker, Fascell & Hoehl, Miami, for respondents.
PER CURIAM.
This cause is before us to review Honeywell, Inc. v. Trend Coin Co., 449 So.2d 876 (Fla.3d DCA 1984), because of direct conflict with Jacksonville, Tampa & Key West Railway v. Peninsular Land, Transportation & Manufacturing Co., 27 Fla. 1, 9 So. 661 (1891), and Bergen Brunswig Corp. v. State Department of Health and Rehabilitative Services, 415 So.2d 765 (Fla. 1st DCA 1982), review denied, 426 So.2d 25 (Fla. 1983). We have jurisdiction. Art. V, 3(b)(3), Fla. Const.
Petitioner (plaintiff below), suffered the loss of jewelry, gold, and silver inventory as the result of a burglary on March 9, 1980. Petitioner sued respondent alleging intentional misrepresentation as to a burglar alarm system, negligent design, negligent installation and service, and breach of contract. The jury returned a verdict awarding compensatory damages of more than $8 million, punitive damages of $1 million and prejudgment interest of more than $3 million. In pertinent part the district court reversed the award of prejudgment interest on the ground that the exact loss was in dispute and could not be ascertained. We recently addressed this issue in Argonaut Insurance Co. v. May Plumbing *1030 Co., 474 So.2d 212 (Fla. 1985), by approving Bergen Brunswig Corp. and holding, as a matter of law, that a plaintiff is entitled to prejudgment interest at the statutory rate from the date of the loss on verdicts which liquidate damages. We disapprove the portion of the district court opinion here which holds to the contrary.
Having accepted jurisdiction of the case on the issue in conflict, we also choose to address briefly other issues raised by the parties. Petitioner urges that the district court erred in reversing for a new trial on damages and in holding that evidence of an inventory contained in an insurance application was admissible to impeach subsequent statements pertaining to the value of the loss. We see no error in the district court's decision on these points.
Respondents urge that the trial court erred in instructing the jury that a twelve percent prejudgment interest rate would be applied. We agree with respondents, at least in part. Section 687.01, Florida Statutes (1979), which was effective at the time of loss, prescribed an interest rate of six percent. Chapter 82-42, Laws of Florida, effective July 1, 1982, amended section 687.01 by prescribing that thereafter the interest rate would be twelve percent. This amendment reflects a legislative decision that a six percent interest rate was adequate until July 1, 1982, and that thereafter a twelve percent rate was applicable. In order to carry out legislative intent the interest rate here should be computed at six percent from the date of the loss until July 1, 1982. Thereafter, interest should be computed at twelve percent. Meigs & Cope Agency, Inc. v. Koffey, 435 So.2d 867 (Fla. 3d DCA 1983). In so holding we recognize an apparent divergence from Board of Public Instruction v. Wright, 77 So.2d 770 (Fla. 1955), where we held that the statutory rate of interest in effect at the time of maturity of bond coupons applied uniformly until the time of judgment even though the legislature changed the statutory interest rate between the time of maturing and the time of judgment. The facts on Wright are skimpy, but it appears that the primary issue was whether there should be any interest at all, and, if there was to be, whether it should be that specified in the contract or the statute. So far as we can determine, there was no issue of whether a two-tier or single tier statutory rate should apply. In any event, our holding here is consistent with legislative intent. To the degree there is conflict, we overrule Wright.
For the reasons set forth above we hold that prejudgment interest may be awarded at the effective statutory rate for the period between time of injury and time of judgment. The decision of the district court below is quashed in part, approved in part and remanded for proceedings consistent with this decision.
It is so ordered.
BOYD, C.J., and OVERTON, McDONALD and SHAW, JJ., concur.
ADKINS, J., concurs in part and dissents in part with an opinion, in which EHRLICH, J., concurs.
ADKINS, Justice, concurring in part and dissenting in part.
I concur in that portion of the opinion which holds that plaintiff is entitled to prejudgment interest at the statutory rate from the date of the loss on verdicts which liquidate damages. I dissent from the balance of the opinion.
This jury trial took twelve days. Twenty-six witnesses appeared and fifty-five exhibits were introduced. The jury found that the value of Trend's stolen inventory on the day of the loss was $8,037,674.60 and assessed $3,171,027.72 in prejudgment interest and $1,000,000.00 in punitive damages.
Honeywell hired accountants to review all of Trend's books and records and sought to disparage the record keeping practices of Trend and to show that Trend's damage claim was unbelievable. The accountants came up with a much smaller value for the loss. Honeywell called a total of seven witnesses to testify concerning the amount of damages which Trend may *1031 have suffered. These accountants testified that Trend's tax returns showed the loss was in the $250,000  $500,000 range, that the same calculations Trend used showed the loss was only $238,000 and that, from all of their review of the records and all of the tests they performed, the loss was between $250,000 and $500,000. All of this evidence was submitted to the jury.
One of the calculations Honeywell's accountants performed showed a loss of $533,000. It was admitted that this calculation was not designed to show the market value of the loss. The accountant was only able to state that all things considered the result was "related" to or "approximately" the market value of the loss. This opinion testimony was excluded by the judge and the majority opinion says this was reversible error.
Honeywell also attempted to impeach Trend's claim of loss by eliciting prior inconsistent statements or inconsistent facts from other witnesses. For example, Honeywell brought out from a police officer that one of the owners of Trend had reported immediately after the burglary that the loss was in the $1,000,000  $2,000,000 range and Honeywell called a former employee to describe what kind and quantity of goods was kept in the safe and cabinets that were broken into so it could argue that the quantity of goods Trend claimed was lost just could not have been there.
The trial court ruled out one item of attempted impeachment, which the majority opinion says was reversible error. Honeywell wanted to introduce Trend's insurance application for the years in question because it stated an inventory value as of November 3, 1979, of $1,600,000. The inventory value as of November 3 was not an issue in the case. This was not the date of the loss and for that reason the insurance application was irrelevant. Also, this application would necessarily have put the collateral source benefits before the jury and created confusion.
The district court recognized the rule that admission of expert testimony lies within the trial court's discretion, but held that such evidence should be admissible at all times "unless the method used by the witness is so totally inadequate or improper that adoption of the method would require departing from all common sense and reason or would require adoption of an entirely new and totally unauthenticated formula in the field of appraising."
This was not the reason the evidence was excluded. The judge relied upon section 90.403, Florida Statutes, which provides as follows:
Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence. This section shall not be construed to mean that evidence of the existence of available third-party benefits is inadmissible.
The evidence in this case was voluminous and the expert testimony which was excluded from the jury was cumulative and could have misled the jury in determining the market value of the precious metals on the date of the theft.
Chris Campos, the lead accountant on Honeywell's team acknowledged during his deposition that the result of this calculation excluded by the trial judge was not intended to represent the market value of the goods on the day of the loss, and then subtracting the market value of the inventory remaining after the loss from his dollar value calculation was like "mixing apples and oranges."
Although Honeywell claims that the judge abused his discretion in excluding the testimony of some expert witnesses, it called as its own witness Joel Berkovitz, a CPA who had previously done work for Trend. Berkovitz said that Honeywell's accountant's approach was improper. He testified that if Trend's records didn't show the quantity of each purchase and sale you could not just use the dollar values of the purchases and sales because of the wildly fluctuating market. Rather, you would have to convert the dollars to weights by referring to market prices at the time or convert to a constant dollar value  just *1032 what Trend did, and Honeywell's accountants failed to do in the excluded calculation.
The district court states that the trial court "erred in excluding Honeywell's expert witnesses." 449 So.2d at 878 (emphasis supplied).
Honeywell's expert witnesses were not excluded  just one of a host, all of whom gave their opinions. They were allowed to provide the jury with almost 200 pages of expert testimony attacking Trend's loss and coming up with valuations of their own. The net effect of the ruling Honeywell complains about was that their accountants testified that the loss was $238,000 instead of the excluded $533,000.
Honeywell's accountants testified that the inventory at the time of the loss was only 15% of what Trend claimed it to be; that based on its own books and records Trend's damage claim was grossly overstated; that in their opinion the loss was between $250,000 and $500,000; that Trend's damage claim was totally at odds with its own tax returns which showed the loss to be around $250,000  $500,000; that Trend's damage claim would make its cost of sales or profit margin totally inconsistent with its previous history and the industry experience for the year in question; that Trend's damage claim was torpedoed by its own financial statements which showed assets, salaries, and contributions to pension plans totally inconsistent with an $8,000,000 loss.
With all of this substantially similar evidence before the jury, the trial judge's exclusion of one more calculation to produce the same figure of approximately $500,000 for the loss must, if error, be considered harmless error. See Aiken v. Miller, 298 So.2d 477 (Fla. 1st DCA 1974), where the court held that the trial court's exclusion of an expert's testimony on causation of an eye injury was at best harmless error because another expert testified that the eye injury was probably related to the accident.
The exclusion of evidence is not to be considered harmful or prejudicial error where other substantially similar evidence has been admitted. Corbett v. Seaboard Coastline Railroad, 375 So.2d 34 (Fla. 3d DCA 1979), cert. denied, 383 So.2d 1202 (1980); Connell v. Green, 330 So.2d 473 (Fla. 1st DCA 1976).
Also, the trial court was well within its broad discretion in excluding the insurance application. This was a matter of weighing the probative value of the evidence against its potential for unfair prejudice or confusion of the issues under section 90.403 of the Florida Evidence Code.
The verdict rendered after twelve days of trial and twenty-six witnesses together with fifty-five exhibits should stand and prejudgment interest should be allowed. No one says there was insufficient evidence to sustain the verdict.
EHRLICH, J., concurs.