# TREND COIN COMPANY, etc. v HONEYWELL, INC., et al.

## Case Nos. 80-8735-CA 06 and 81-3235-CA 06

Eleventh Judicial Circuit, Dade County

February 4, 1988

### APPEARANCES OF COUNSEL

**Arthur J. England, Jr.,** and **Joseph H. Serota,** Fine Jacobson Schwartz Nash Block & England, for Fuller Feingold and Mallah, P.A.

**Andrew Hall,** and **Scott Orth, Hall and O'Brien,** for Trend Coin Company, et al.

### OPINION OF THE COURT

JOSEPH J. GERSTEN, Circuit Judge.

### *FINAL JUDGMENT*

A nonjury trial was conducted before this court on December 12 and

13, 1987, and concluding on January 4, 1988, on the charging lien brought by Fuller Feingold and Mallah, P.A. ("Fuller Feingold") for attorney's fees due from Trend Coin Company, et al. ("Trend Coin"). The court has review the record, heard and evaluated the testimony of witnesses, received other evidence, and heard the arguments of counsel. On this basis, the court makes the following findings of fact and conclusions of law.

## Findings of Fact

1. On or about March 12, 1980, Fuller Feingold was engaged by Trend Coin to seek a recovery from Honeywell, Inc. ("Honeywell") for losses resulting from the failure of Honeywell's alarm system to protect Trend Coin from a theft of jewelry from its premises.

2. Trend Coin signed a written fee contract with Fuller Feingold, agreeing in relevant part to pay attorney's fees equal to 40% of any recovery in the event an appeal was taken from the trial court by either party. This contract was entered into by an officer of Trend Coin freely, without compulsion or the exercise of undue influence by Fuller Feingold, and with full knowledge of the company's rights with respect to legal representation.

3. From March 12, 1980 to November 1, 1980, Fuller Feingold was sole counsel for Trend Coin and in that capacity investigated the loss, performed necessary legal research, pursued discovery, and filed pleadings against Honeywell on behalf of Trend Coin. During this period, Trend Coin did not complain as to the adequacy or quality of Fuller Feingold's services, or as to the terms of the fee agreement.

4. Approximately 7 ½ months after Fuller Feingold was retained by Trend Coin and approximately five months after the complaint was filed on its behalf, Trend Coin suggested that Fuller Feingold find an associate co-counsel for trial of that case.

5. Commencing on November 1, 1980, the law firm of Floyd Pearson Richman Greer Weil Zack & Brumbaugh, P.A. ("Floyd Pearson") jointed Fuller Feingold in representing Trend Coin against Honeywell for the recovery of loss from the burglary.

6. A revised contract between Fuller Feingold and Trend Coin was signed on November 1, 1980, calling for a 50% contingent fee (in the event of appeal). This contract was signed by an officer of Trend Coin freely, without compulsion or the exercise of undue influence by Fuller Feingold, and with full knowledge of the company's rights with respect to legal representation. Trend Coin was informed and remained aware that Fuller Feingold and Floyd Pearson had agreed to divide equally the contingent fee called for in the November 1 contract.

62

7. Commencing on November 1, 1980, and continuing through March 1984, Fuller Feingold and Floyd Pearson were engaged in the joint representation of Trend Coin. During this period, Fuller Feingold performed all necessary legal services in accordance with its contract without complaint by the client or its joint counsel as to the adequacy or quality of those services, or without criticism by the client as to the results obtained at trial.

8. Approximately three years after the initial engagement of Fuller Feingold, Trend Coin's case against Honeywell was tried to a jury. At the trial, Trend Coin claimed a loss in the burglary of $8,037,674.59. The trial resulted in a verdict and judgment in favor of Trend Coin in the amount of $12.2 million, broken down as follows:

$8,037.674.60 — amount of loss
$3,171.027.72 — prejudgment interest
$1,000,000.00 — punitive damages

Special verdict forms used by the jury indicate that Honeywell was found liable to Trend Coin on multiple counts which had been framed in pleadings and documents filed by Fuller Feingold either while they were sole counsel to Trend Coin or made during the course of the joint representation by the two law firms.

9. Both Fuller Feingold and Floyd Pearson participated in the trial and in post-trial motions.

10. Honeywell appealed the verdict rendered in favor of Trend Coin to the Third District Court of Appeal. Fuller Feingold and Floyd Pearson acted as joint counsel during the preparation of briefs to the appellate court.

11. Twice during the trial, and continuing for approximately eight months after the jury verdict, the principals of Trend Coin sought to get their joint counsel to accept lower fees than were called for in the November 1 fee contract. Trend Coin's desire for a reduction of legal fees was first communicated to the Fuller Feingold and Floyd Pearson law firms during the course of the trial in June 1983. One proposal, made during trial but before the jury returned its verdict, called for a cash payment of $1,000,000 to each firm of attorneys to "buy out" their contracts. A second proposal, after trial, would have provided a 40% contingency with a $4,400,000 cap, to be shared equally by the two law firms. No agreement for a fee reduction was reached between Trend Coin and its attorneys, however.

12. The principals of Trend Coin admitted having discussed *among themselves,* on numerous occasions dating from when they first en-

gaged counsel, their private dissatisfaction with the fee agreements made with their attorneys. However, they apparently decided not to mention their concerns about the fee agreements to their lawyers for three years, until after the trial commenced. There is no record evidence of fee discussions between the principals of Trend Coin and their attorneys after the fee agreement was executed, until subsequent to the commencement of the trial.

13. Fuller Feingold and Floyd Pearson were discharged as counsel to Trend Coin on March 17, 1984. The only reason given for discharge was a desire of Trend Coin to pay less in attorney's fees. There is no evidence whatsoever that Trend Coin was dissatisfied with the legal services performed by its team of law firms or either member of that team, or with the results obtained at trial.

14. In May or June of 1984, Larry Stewart left the Floyd Pearson law form to form Stewart Tilghman Fox & Bianchi, P.A. ("Stewart Tilgham").

15. Promptly after discharging its teams of attorneys, Trend Coin re-engaged the Stewart Tilghman law firm. Although there is no direct evidence of the fee Trend Coin agreed to pay Stewart Tilghman, there is evidence which indicates that the fee was not in excess of $3,050,000 (the amount the law firm would have been entitled to receive from the jury award of $12,200,000, based on its agreement with Fuller Feingold to divide equally a 50% contingent fee in the event of appeal).

16. Approximately two weeks after Trend Coin discharged Fuller Feingold, the Third District Court of Appeal rendered a decision affirming Honeywell's liability for Trend Coin's loss, including liability for punitive damages, but reversing for a new trial on damages. *Honeywell, Inc. v. Trend Coin Co.,* 449 So.2d 876 (Fla. 3d DCA 1984). Fuller Feingold was identified as co-counsel of record in the Third District Court of Appeal's decision.

17. The district court's decision on these points was subsequently affirmed by the Florida Supreme Court, where Fuller Feingold was again identified as co-counsel of record. *Trend Coin Co. v. Honeywell, Inc.,* 487 So.2d 1029 (Fla. 1986).

18. On March 6, 1984, Fuller Feingold filed a charging lien in this proceeding, which was amended on April 13, 1987.

19. The Stewart Tilghman law firm continued to represent Trend Coin through a settlement of the case with Honeywell in early 1987. On April 21, 1987, Trend Coin, Fuller Feingold, Stewart Tilghman and Floyd Pearson entered into a stipulation which recognized, among

other matters, that a $12.3 million settlement had been reached by Trend Coin and Honeywell, that a fund of 25% of that amount had been set aside and would be preserved for the payment of amounts determined to be due Fuller Feingold under the firm's charging lien for fees and costs, and that this court would have continuing jurisdiction to address issues that might arise with respect to Fuller Feingold's charging lien notwithstanding the parties' settlement.

20. This court approved the stipulation on May 4, 1987.

21. Larry Fuller of the Fuller Feingold law firm recorded approximately 1,000 hours with respect to the representation of Trend Coin between the period March 12, 1980 and March 12, 1984. Unrecorded time for services spent on behalf of Trend Coin was estimated at between 300 to 400 hours. The court finds that Fuller & Feingold expended 1,300 hours on behalf of Trend Coin during the course of its representation, and that all of these hours were reasonable and necessary.

22. Fuller Feingold incurred unreimbursed costs which were reasonable and necessary to their representation of Trend Coin in the amount of $1,133.53. These costs were not disputed by Trend Coin.

23. There is no record evidence of the number of hours spent by Stewart Tilghman between March 1984 and settlement of the underlying suit in 1987.

24. Based on the testimony of experts and other witnesses, the court finds that $150 per hour was the hourly rate charged for the services of Larry Fuller in 1980.

25. The court has weighed the respective opinions of the two experts presented by the parties in this cause. Based on the credentials of the experts, their experience, their view of the case file and facts, their analysis of the law, and the demeanor and candor of Fuller Feingold's expert during his live testimony, the court concludes that the greater weight must be given to the testimony of Fuller Feingold's expert witness.

26. Fuller Feingold's expert witness took into account as relevant to a fee determination the totality of the circumstances surrounding the relationship between Trend Coin and Fuller Feingold, including the contract itself and the value which the principals of Trend Coin placed on Fuller Feingold's services up to the date of trial and before the jury had rendered a verdict awarding Trend Coin $12.2 million. The court finds that the value placed on Fuller Feingold's services by the client prior to and after the jury verdict are relevant circumstances.

**65**

## Conclusions of Law

27. In *Rosenberg v. Levin,* 409 So.2d 1016 (Fla. 1982), the Court held that a client has the unfettered right to discharge its attorney at any time, and that upon discharge the attorney is entitled to recover from the client the reasonable value of services performed before discharge, as limited by the amount that would have been received under the attorney's contract with its client. In *Rosenberg,* the Court was balancing the right of clients to discharge their attorneys against the attorney's right to be compensated for work that had been performed. The *Rosenberg* case dealt with the usual discharge situation where there is only one attorney representing the client to engage successor counsel and pay additional legal fees.

28. There are two competing interests which underlie the *Rosenberg* decision:

(a) "[T]he need for the client to have the ability to discharge his attorney when he loses [confidence in the integrity and ability of] the attorney"; and

(b) "[T]he attorney's right to adequate compensation for work performed."

*Rosenberg,* 409 So.2d at 1019 (Fla. 1982). The purpose of the fee limitations announced in *Rosenberg* is to bar any economic restraint on a client's ability to engage new counsel if the client chooses to discharge its existing attorney.

29. This case does not involve facts similar to those in *Rosenberg.* The key factor present in *Rosenberg,* and absent here, was the freedom given clients to obtain a *substitution* of counsel without economic penalty. *Rosenberg* has no applicability to a joint representation situation in which the cient contemplates from the outset a co-counsel relationship, the client expressly agrees to one which which is divisible between co-counsel but privately intends to seek a reduced fee from counsel after the work is performed and results obtained, the client has no dissatisfaction whatsoever with the quality of representation or otherwise with existing counsel but nonetheless discharges its attorneys after substantial services are performed solely as a fee-saving device, and the client then continues with one of its law firms for a fee at or below the level previously agreed to for that counsel alone.

30. The *Rosenberg* policy of protecting clients from economic penalty does not come into play in this case. On the contrary, if the *Rosenberg* decision were applied in this case, Trend Coin would be provided with the exact opposite of an economic penalty—an economic

66

windfall—and the court's decision would run counter to the policies underlying the *Rosenberg* decision.

31. The *Rosenberg* decision did not disturb the Supreme Court's earlier decision in *Milton Kelner, P.A. v. 610 Lincoln Road, Inc.,* 328 So.2d 193 (Fla. 1976. In that case, the Court upheld full recovery on the basis of the attorney's contract with his client where discharge occurred after a favorable result had been obtained for the cient. The *Kelner* decision, which more closely parallels the facts in this proceeding, provides insight into the concern expressed in *Rosenberg* for the right of attorneys to collect on the basis of their contracts for services which are in fact performed. In recognizing the unique situation of *Kelner* in its *Rosenberg* decision, the Supreme Court of Florida has indicated that the policy considerations in counsel discharge cases are the guideposts for resolving fee disputes arising from those situations. The Court's exception to a "capped" quantum meruit recovery for a *Kelner*-type situation acknowledges the Supreme Court's awareness of the fact that *Rosenberg* does not and was not intended to cover all situations.

32. While there are no cases in Florida precisely on this point, courts in other states have held that a full contract recovery is warranted in cases where substantially all services have been performed. *Brockman v. Rorex,* 208 S.W.2d 991 (Ark. 1948); *Anderson v. Garley,* 606 P.2d 90 (Idaho 1980); *LaBach v. Hampton,* 585 S.W.2d 434 (Ky. Ct. App. 1979); *Tonn v. Reuter,* 95 N.W.2d 261 (Wis. 1959).

33. No case decided in Florida presents the precise situation which exists in this proceeding. In a situation where there is joint representation and an agreement for an equal division of fees, courts in other states have held that the precise amount of work performed by either of the attorneys is immaterial and that equal compensation is appropriate. *See Stissi v. Interstate and Ocean Transport Co. of Philadelphia,* 814 F.2d 848 (2d Cir. 1987); *Oberman v. Reilly,* 411 N.Y.S.2d 23 (N.Y. App. Div. 1978); *Sterling v. Miller,* 157 N.Y.S.2d 145 (N.Y. App. Div. 1956); *Carter v. Katz, Shandell, Katz & Erasmous,* 465 N.Y.S.2d 991 (Sup. Ct., Queens Co. 1983).

34. The court concludes that an equal division of fees would have been appropriate here irrespective of the extent of particular services performed by either law firm during the course of joint representation, based on the contract between Fuller Feingold and Floyd Pearson and their joint representation of Trend Coin in fact.

35. Under its contract with Trend Coin, Fuller Feingold would be entitled to recover the sum of $3,075,000.00, representing 25% of the recovery obtained in the litigation.

36. Proceedings to enforce a charging lien are equitable in nature. *Daniel Mones, P.A. v. Smith,* 486 So.2d 559 (Fla. 1986); *Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom,* 428 So.2d 1383 (Fla. 1983); *de la Cruz v. Brown,* 338 So.2d 245 (Fla. 3d DCA 1976).

37. The court holds that a quantum meruit recovery under the *Rosenberg* decision is not applicable to this case, and that Fuller Feingold is entitled to recover the amount which Trend Coin contracted to pay, or $3,075,000. The full contract price is payable in this instance (i) because Trend Coin contracted for and received the joint representations of two law firms, (ii) because its team of lawyers produced a significant verdict for Trend Coin by obtaining a jury verdict for $12.2 million and obtained through trial and all initial appellate work a decision sustaining liability and the right to recover for punitive damages, (iii) because Trend Coin eventually recovered virtually the precise amount awarded at trial by continuing the services of one of its team of firms for fees no greater than had originally been agreed for that counsel, (iv) because Trend Coin discharged its counsel after substantial performance of the contract and a favorable result obtained, for the sole purpose of reducing their fees, and (v) because the evidence reflects the principals of Trend Coin intentionally induced the attorneys to work on the case for three years without communicating to their attorneys their unhappiness with the fee arrangements until after the trial began. There is substantial evidence of bad faith on behalf of the principals of Trend Coin, and the court finds that a reduction from the contract amount of fees would constitute unjust enrichment.

38. Utilizing the guideposts provided by the *Rosenberg* and *Kelner* decisions, equity mandates a full contract recovery for Fuller Feingold in this situation. Enforcement of Trend Coin's fee contract gives the client exactly what it bargained for; that is, 50% of the recovery obtained from Honeywell. To give more would unjustly enrich Trend Coin. See *Dolph v. Speckart,* 186 P.2d 32, 35 (Ore. 1920), to the effect that "[a client] who was wrongfully broken a contract should not be permitted to reap advantage from his own wrong. . . ."

### Additional Finding of Fact

Although the court has determined that a contract recovery is warranted rather than a recovery based on quantum meruit, the court will nonetheless pass on a quantum meruit award since it has heard evidence regarding the reasonable value of Fuller Feingold's services.

39. The court rejects Trend Coin's assertion that the reasonable

value of services is required to be calculated under the formula set forth in *Florida Patient's Compensation Fund v. Rose*, 472 So.2d 1145 (Fla. 1985). The *Rowe* decision has no applicability in an equitable proceeding to enforce an attorney's charging lien against the proceeds of recovery obtained on behalf of a former client. *See Stabinsky, Funt & De Oliveira v. Alvarez*, 490 So.2d 159 (Fla. 3d DCA 1986); *Wishoff v. Wishoff*, 497 So.2d 1351 (Fla. 4th DCA 1986). Rather, if recovery is limited to quantum meruit, the appropriate standard for computation is determinable by reference to the following statement of the Florida Supreme Court in the *Rosenberg* case:

> In computing the reasonable value of the discharged attorney's services, the trial court can consider the totality of the circumstances surrounding the professional relationship between the attorney and client. Factors such as time, the recovery sought, the skill demanded, the results obtained, and the attorney-client contract itself will necessarily be relevant considerations.

40. Trend Coin has presented no evidence as to the reasonable value of Fuller Feingold's services determinable under the criteria set forth by the Florida Supreme Court in *Rosenberg*. Trend Coin's only evidence on the reasonable value of Fuller Feingold's services is predicated on the lodestar method of computing fees, as set forth in *Rowe*. Having concluded that *Rowe* is inapplicable in this proceeding, the court rejects the testimony of Trend Coin's expert and adopts the testimony of Fuller Feingold's expert, who took into account all of the criteria set forth in *Rosenberg* and in the Code of Professional Responsibility. Factors considered by the court in setting a fee include the 1,300 hours of time incurred by Fuller Feingold; Larry Fuller's prior expertise and experience in burglary alarm loss cases; the contingent nature of the representation based on a 40%-50% contingent fee contract which the client freely approved; the high degree of recovery risk given the novelty and difficulty of the issues; and the excellent recovery obtained for the client. Based on these factors and the opinion of Fuller Feingold's expert, the court determines that a reasonable legal fee for Fuller Feingold, is $3 million.

### Additional Conclusion of Law

In order to avoid a retrial of this charging lien proceeding, the court here records an additional conclusion of law based on the facts in this proceeding.

41. The court concludes that, were *Rowe* held to be applicable to this proceeding (which the court believes is *not* the case), the evidence supports a determination that the appropriate multiplier factor would

**69**

be three. Based on the court's findings that 1,300 hours were reasonably and necessarily incurred by Fuller Feingold on behalf of Trend Coin, that $150 was an appropriate hourly rate for services billed by Larry Fuller in 1980, and that the appropriate *Rowe* multiplier in this case should be three, a merely mechanical *Rowe* computation would award Fuller and Feingold no less than $585,000. The court concludes, however, that an hourly rate in this case is more appropriately determinable by reference to the value of services which the client placed on the work performed by the attorneys. Inasmuch as Trend Coin was willing to buy out its contingent fee contract from Fuller Feingold for $1,000,000 before a jury verdict was returned, at a time when Fuller Feingold had spent $1,000 hours on the case, the more appropriate fee in this case using a lodestar multiplier of 3 would be $3 million.

ACCORDINGLY, IT IS HEREBY ORDERED that:

1. Fuller Feingold shall receive the sum of $3,075,000.00 as fees due and owing, plus interest on the settlement funds held in escrow and unreimbursed costs in the amount of $1,133.53.

2. Stewart Tilgham is direct to pay over to Fuller Feingold the full amount held in escrow pursuant to its stipulation of April 21, 1987, including interest.

3. Fuller Feingold is awarded costs in this charging lien proceeding, to be taxed at a subsequent hearing.

Let execution issue against the fund and Trend Coin.

DONE AND ORDERED in Chambers, at Miami, Dade County, Florida, this 4th day of February, 1988.