SILBERMAN, Judge.
April Lopez, as personal representative of the Estate of Amalia Lozoya, seeks *282 review of the final judgment which was rendered after a defense verdict in this automobile negligence action. We affirm the final judgment in all respects. We write to address the admissibility of evidence that one of the drivers was unlicensed at the time of the accident.
The accident occurred at the intersection of U.S. Highway 301 and S.R. 674 in Ruskin during the late afternoon of December 14, 2006. Lozoya was riding in a red Nissan Sentra driven by her eighteen-year-old nephew, Jesus Rivera, III. Rivera was driving northbound on U.S. 301. As Rivera was attempting to turn left onto S.R. 674, he collided with a white cargo van that was driving southbound on U.S. 301. Ramiro Pantoja-Vega, an employee of Wink Stucco, Inc., was driving the cargo van and was hauling a cement mixer affixed to a trailer.
Lozoya died at the scene from her injuries, and Lopez filed a complaint alleging negligence and wrongful death against Wink Stucco, Pantoja-Vega, Rivera, and Rivera’s mother, Yvette Rivera. Lopez settled with Pantoja-Vega and voluntarily dismissed her claim against Yvette Rivera prior to trial. The remaining parties agreed to bifurcate the claims, and Lopez proceeded to trial against Wink Stucco and Jesus Rivera on the issue of liability.
Rivera testified that he was driving north on U.S. 301 in the Nissan with Lozo-ya on the way to pick up his little sister from daycare. When he first reached the intersection of U.S. 301 and S.R. 674, Rivera stopped at a red light in the left turn lane. He was the third car in line. The light changed to a green arrow, and Rivera started to turn behind the cars in front of him. He did not see the van coming until it was too late to avoid a collision. By that time, the two vehicles in front of him had already made the turn safely. He believed the van was speeding and that it had violated his right of way.
None of Lopez’s other witnesses specifically confirmed Rivera’s testimony that he turned on a green arrow, and certain witnesses testified that the light had changed from a green arrow to a green ball. But Lopez presented testimony of an expert accident reconstructionist and two eyewitnesses that Pantoja-Vega was speeding in the white cargo van. Lopez’s accident reconstruction expert estimated that the white cargo van was traveling at least 60 mph at the time of impact, which was at least 15 mph over the 45 mph speed- limit.
Wink Stucco presented the testimony of Pantoja-Vega, an expert accident recon-structionist, and an eyewitness. They testified that Pantoja-Vega was not speeding in the white cargo van, and the eyewitness stated that Pantoja-Vega had a green light. Wink Stucco defended on the theory that the red Nissan violated the white cargo van’s right of way by turning left on a solid green light directly into the van’s path. Wink Stucco claimed that eighteen-year-old Rivera was an untrained driver without enough experience to safely judge whether he had enough time to make the left turn.
The issue we address today is the admissibility of evidence that Rivera had never obtained a driver’s license. This issue was first brought before the trial court in a pretrial motion in limine filed by Lopez. The court heard argument and reserved ruling on the issue. The court revisited the issue during the reading of Rivera’s deposition testimony when Wink Stucco sought to read a series of questions to which Rivera had responded, “No Comment.” The questions asked whether Rivera had a Florida driver’s license, when he first drove a vehicle, and how many times he had driven- a vehicle in the past. The *283 court denied Lopez’s motion to exclude the testimony.
The court also permitted the investigating officer to testify that Rivera had a Florida identification card, but he had not taken the written exam and driving proficiency test necessary to obtain a driver’s license. The officer reported that Rivera said he started driving when he was fifteen or sixteen and had driven occasionally since then. Rivera told the officer he had lived in Miami before the accident and had driven the red Nissan to the auto parts store or around the neighborhood when the car made a weird sound to try to determine what was wrong. He also picked up his little sister from daycare. But for the most part, Rivera used public transportation because his parents did not like for him to drive the car.
The admissibility of evidence of a violation of a licensing statute is a question of law that turns on the relevancy of that evidence as it pertains to the facts of a particular case. Brackin v. Boles, 452 So.2d 540, 545 (Fla.1984). In order for such evidence to be admissible, there must be “a causal connection between that violation and the injuries incurred.” Id. at 544. To establish this causal connection the driver’s competence and experience must be placed at issue in the case. Id. at 545.
In Brackin, the negligence action arose after the plaintiff stopped at a three-way intersection, turned left, and was struck by the defendant’s vehicle from the left. Id. at 542. The plaintiffs theory of negligence was that the defendant was speeding. Id. at 545. The plaintiff also sought to present evidence that, at the time of the accident, the defendant had been driving in violation of the terms of his restricted driver’s license by failing to be accompanied by a licensed driver over eighteen years of age. Id. at 542.
The trial court held that evidence of the driver’s violation of the licensing statute was inadmissible because there was no causal connection between the evidence and the injuries sustained in the accident. Id. at 544. The First District disagreed, holding that the evidence was admissible despite the lack of any causal connection. Id. at 545. The supreme court disagreed with the district court and concluded that the trial court had properly decided the issue.
The supreme court explained that, despite its precedent holding that a violation of a traffic law is evidence of negligence, the general rule that evidence must be relevant to be admissible still applied. Id. Thus, the court concluded that “a person’s violating a traffic regulation is admissible evidence only if it tends to prove that that person has negligently operated an automobile.” Id. And the court noted that in some cases, the violation of a licensing statute “may be relevant to show the driver’s inexperience and incompetence in handling an automobile.” Id. However, the plaintiff had not placed the defendant’s experience and competency in issue but had argued that the accident was caused by the defendant’s speeding. Thus, ■ the supreme court determined that evidence of the licensing violation was not admissible.
In Brackin, the supreme court approved the reasoning of the Third District in two cases in which the court held that the violation of a- licensing statute was relevant to the injuries incurred in those cases. See id. at 544 (citing Corbett v. Seaboard Coastline R.R. Co., 375 So.2d 34 (Fla. 3d DCA 1979), and Dorsett v. Dion, 347 So.2d 826 (Fla. 3d DCA 1977)). In Corbett, the district court held that evidence that the sixteen-year-old defendant was driving without a license was admissible when the plaintiffs theory of negligence was that the defendant collided with *284 a crossing train because she was speeding and “inattentive in that she failed to heed the warnings that were given” at the crossing. 375 So.2d at 39. In Dorsett, evidence that the plaintiff was illegally driving with a learner’s permit was similarly deemed relevant because the accident did not involve any contact between her vehicle and the defendant’s vehicle and “the plaintiffs injury may well have resulted from her own inexperience and her inability to handle her own car.” 347 So.2d at 827; see also Lenhart ex rel. Chronister v. Basora, 100 So.3d 1177, 1178-79 (Fla. 4th DCA 2012) (holding that evidence of a driver’s unlicensed status and limited driving experience was relevant to the issue of the driver’s comparative negligence when the driver caused the accident by abruptly turning into the plaintiffs lane); Klanseck v. Anderson Sales & Serv., Inc., 426 Mich. 78, 393 N.W.2d 356, 361 (1986) (holding that the plaintiffs failure to have a motorcycle endorsement was relevant when the defense theory of the case was that the plaintiff could have avoided the accident by handling his tire blowout competently).
In this case, Wink Stucco’s theory of defense was that Rivera was an unlicensed driver without sufficient experience to safely judge whether he had enough time to make the left turn in front of the white cargo van. In support of this theory, Wink Stucco presented testimony that Rivera followed other cars into the intersection after the green arrow went off and made a left turn directly in the path of the white cargo van. Rivera was eighteen years old and had only driven occasionally since he was fifteen or sixteen because his parents did not like for him to drive their car. Wink Stucco also presented testimony that the white cargo van had the right of way with a solid green light, was not speeding, and did not have enough time to avoid the collision. While there were factual disputes at trial, Wink Stucco’s evidence and theory of defense established the requisite causal connection to support the admission of evidence that Rivera was an unlicensed driver.
Affirmed.
VILLANTI, J., Concurs.
WALLACE, J., Dissents with opinion.